## Case No. 6,141.

### HARRISON v. ROWAN.

[3 Wash. C. C. 580.] [1]

Circuit Court, D. New Jersey. Oct. Term, 1820.

WILLS—ISSUE DEVISAVIT VEL NON—SANITY OF TESTATOR—EVIDENCE.

1. Where a testator has given a fee to A, if she should survive his daughter, dying without issue then living, A is not a witness in support of the will.

2. A witness may depose as to what he thought of the testator's sanity, at or about the time the will was made; but not as to what the witness had declared upon the subject to others.

[Cited in Clark v. Ohio, 12 Ohio, 493; Thompson v. Kyner, 65 Pa. St. 377; Waddington v. Buzby, 45 N. J. Eq. 174, 16 Atl. 690.]

3. Upon the cross examination of a witness, he may be asked leading questions, to draw from him a further disclosure than he made upon the principal examination, and in refer-

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the supreme court of the United States, under the supervision of Richard Peters, Jr., Esq.]

ence to the matter testified about. But not as to other matter.

[Cited in Moody v. Powell, 17 Pick. 499; Legg v. Drake, 1 Ohio St. 292; approved in People v. Oyer & Terminer County Court, 83 N. Y. 459. Cited in Hildreth v. Marshall, 51 N. J. Eq. 250, 27 Atl. 465.]

4. The proceedings of the orphans' court, upon the offer of a will for probate as to personal property, and the decree of the prerogative court refusing the probate, are not evidence upon this issue; and if the one party read part of a deposition, to show that a witness had contradicted himself, the other side may read the whole, to prove his consistency.

[Cited in State v. Phillips, 24 Mo. 485.]

5. It is not necessary for the devisee to prove, that the will was read to the testator in the presence of the witnesses. In general, this is to be presumed; but if the testator was blind, or incapable of reading; or if a reasonable ground be laid for believing it was not read to him; or that there was fraud in the transaction; it is necessary for the devisee to satisfy the jury that the will was so read, or that the contents were known to the testator.

[Cited in Vernon v. Kirk, 30 Pa. St. 221; Hovey v. Hobson, 55 Me. 256; Kahl v. Schober, 35 N. J. Eq. 466.]

6. The testator should appear to have had a sound disposing mind and memory; that is, that he was capable of making his will, with an understanding of what he was doing.

[Cited in Hall v. Unger, Case No. 5,949.]

[Cited in Aurand v. Wilt, 9 Pa. St. 56; Harden v. Hays, Id. 162; Davis v. Calvert, 5 Gill & J. 284; Beaubien v. Cicotte, 12 Mich. 490; Kinne v. Kinne, 9 Conn. 103–105; Trish v. Newell, 62 Ill. 204; Benoist v. Marvin, 58 Mo. 316; Thomas v. Stump, 62 Mo. 275.]

7. A man may be capable of disposing by will, and yet incapable to make a contract, or to manage his estate. The question is as to competency when the will was made, though evidence of acts and sayings before is always admitted.

[Cited in Hovey v. Chase, 52 Me. 309.]

8. The evidence of attesting witnesses to the will is most to be regarded.

9. Where an issue of "devisavit vel non" is directed out of chancery, in England, the practice is, for the judge who tried the cause to return, with the verdict, his notes; and if the chancellor is dissatisfied, on the ground of the admission of improper evidence, or the rejection of what was proper, or for other reasons, he will direct a new trial; but no exception can be taken, at nisi prius, to the opinion of the judge who tried the cause. In the circuit courts of the United States if the court is supposed to have erred in any of these particulars, the proper mode is to move the court, sitting in equity, for a new trial.

[Cited in Pfeil v. Kemper, 3 Wis. 318; Kinne v. Kinne, 9 Conn. 105; Potts v. House, 6 Ga. 324; State v. Pike, 49 N. H. 399.]

This was an issue of devisavit vel non, directed, by this court, on its equity side, to try whether John Sinnickson did make a valid and legal will, to pass his real estate? During the trial, the following points of evidence were ruled by the court.

1. The plaintiff offered to examine one of the daughters of Mrs. Dick, (now living,) in support of the will. An objection was made to the competency of the witness, on the ground of interest; it being contended, that she has a contingent estate in certain property comprehended within the following bequests; viz. "If my daughter should have, and leave issue living at her death, and if it shall also happen, that my son Francis shall die without lawful issue, then I give to the issue of my daughter, in fee, Petits' farm. But if my said children shall have no such issue, then I devise the said farm to my sister, Sarah Dick, and to her heirs, in fee simple; and if she shall not survive my said children, I devise the same to the heirs of the said Sarah, in fee." It was contended by the plaintiff's counsel, that Mrs. Dick took an estate in fee, and that the limitation over, to her heirs, was void; and consequently, that the witness had no other interest, than what an expectant has; which affords no objection to his competency.

BY THE COURT. The clause of the will must be taken altogether; and every part of it should be carried into effect, if it can. The clear meaning of the testator, was to give a fee simple estate to Mrs. Dick; provided she should survive the daughter, dying without issue, then living. But if Mrs. Dick should die before the happening of such contingency, then the estate was to vest in the heirs of Mrs. Dick, as purchasers, by way of executory devise. The witness, therefore, has a contingent interest in supporting the will; which, we think, disqualifies her from being a witness.

2. A witness may be asked, what opinion he formed of the sanity of the testator, at or about the time of the will being made; but not what he said to third persons upon the subject.

3. Upon the cross examination of a witness, he may be asked leading questions, to draw from him a further disclosure than was made upon the principal examination, and in reference to the matter testified about. But if the cross examination respects new matter, leading questions cannot be asked.

4. The plaintiff's counsel having, upon the examination in chief, asked some questions respecting the sanity of the testator, is not, on that account, prevented from examining witnesses, to rebut the evidence of the defendant upon that subject; although it was irregular for the plaintiff, in the first instance, to give evidence of sanity. All that he has to do, is to prove the due execution of the will, according to the form prescribed by the statute. Incapacity, or fraud, is the defence set up on the other side, which the plaintiff is then called upon to repel. Nevertheless, it would be too rigid to preclude the examination of his witnesses on that subject; because he had irregularly asked some questions respecting it, in the first instance.

5. The defendant offered to read the proceedings in the orphans' court, upon the offer of this will for probate, as a testament of personal estate; and the decree of the prerogative court, refusing probate. This was objected to, and the following cases were cited, 6 Cruise, Dig. 10; 1 Ld. Raym.

744, 262; Pennington [1 N. J. Law] 47. In support of the evidence, was read the act of assembly, made in 1784; 3 Day, 326; Spencer v. Spencer [Case No. 13,233].

PENNINGTON, District Judge, stated, that, until the law of 1784, the jurisdiction of the ordinary was always considered, in this state, as being similar to that of the ecclesiastical court in England, and confined entirely to testaments of personal estate. That the validity of a will, in relation to real estate, was open for decision of the common law courts, upon a trial in ejectment, or upon an issue of devisavit vel non, directed out of chancery. That the act of 1784 made no alteration in this respect; and that it has always been so understood, and such has been the practice.

WASHINGTON, Circuit Justice, concurred in the opinion, that the evidence was inadmissible, for the reasons assigned by Judge PENNINGTON.

6. If one of the parties reads part of a deposition, in order to prove that the witness who gave it contradicted what he has now stated upon his examination in court, the other side has a right to refer to the whole deposition, to support the consistency of the witness.

For the plaintiff, it was contended, that it is not necessary to prove, that the will was read to the testator before the witnesses, even although the testator was blind. 5 Bos. & P. 415; Shep. Touch. 54; 2 Johns. 404. That capacity to make a will is always to be presumed, till the contrary is proved. 5 Johns. 158. That the person who impeaches the will on this ground, must do it by proving facts, and not by the opinions of witnesses. Swinb. Wills, 78. And that no extremity of bodily imbecility is sufficient to prove mental incapacity. Swinb. Wills, 111; 8 Vin. Abr. 54, pl. 8; 3 P. Wms. 130; Phil. Ev. 375; 1 Wash. [Va.] 225. That testimony to prove incapacity, given by the attesting witnesses, is to be cautiously received, as they are guilty of great misbehaviour in having attested it when their opinion was against his sanity. 3 Mass. 330; Pow. Dev. 709. That the question is merely as to a general testamentary capacity, and not a capacity in reference to the particular will. Pow. Dev. 145; Swinb. Wills, 79, 80. Upon the subject of fraud, that no evidence short of direct fraud and circumvention is admissible;—not to be collected from circumstances. Swinb. Wills, 10, 11; 8 Term R. 147, c. 3, case 61. As to admitting evidence of declarations of the testator at other times, and leaving out of the will certain parts of the testator's property. 2 P. Wms. 209; 2 Bin. 622.

Cases cited for the defendant: Southard [2 N. J. Law] 455; Pow. Dev. 718; Peake, Ev. 490; 2 Burn. Ecc. Law, 513; 1 Fonb. 12, 114; Swinb. Wills, 112.

Before WASHINGTON, Circuit Justice, and PENNINGTON, District Judge.

WASHINGTON, Circuit Justice (charging jury). This is an issue directed by this court, sitting in equity, to try whether John Sinnickson made a valid will for disposing of his real estate; and this is the question which you are to decide, upon the evidence which has been laid before you. The plaintiff holds the affirmative of this question; and all that he has to do, is to satisfy you that this will was executed in due form, according to the laws of this state. This he has done; and no question has been made at the bar upon this point. But the defendant impeaches the validity of the will, upon the following grounds:—1. Want of a testamentary capacity in the testator, to dispose of his property by will; and, 2. Fraud and circumvention produced upon the testator by the person who drew the will. A third objection was made, by one of the defendant's counsel; which was, that the will is not proved to have been read over to the testator, in the presence of witnesses. We understand this to be made as a substantive objection to the will, although it was not so argued by the other counsel on the same side, who very properly considered it merely as a badge of fraud, that it was not proved to have been read. We will, therefore, at once dispose of this point, by observing, that it is not necessary, in order to establish the will, that the person claiming under it, should prove that it was read over to the testator, in the presence of the attesting, or of other witnesses. It would be an unwise provision in the law, to require this to be done, inasmuch as most men are careful to confine to their own breasts the manner in which they have disposed, or mean to dispose, of their property by will. The domestic peace and harmony of the testator's family might be very unhappily jeoparded, if publicity were necessary to be given on such occasions. The law presumes, in general, that the will was read by or to the testator. But, if evidence be given that the testator was blind, or from any cause incapable of reading; or if a reasonable ground is laid, for believing that it was not read to him, or that there was fraud or imposition of any kind practised upon the testator, it is incumbent on those who would support the will, to meet such proof by evidence, and to satisfy the jury either that the will was read, or that the contents were known by the testator.

We now proceed to lay down some general rules, for assisting the jury in coming to a satisfactory conclusion upon the two points of capacity and fraud; and to notice some of the arguments at the bar, for the purpose of giving the sanction of the court to such of them as we think are consonant with law, and our disapprobation of those which are not.

1. As to the testator's capacity. He must, in the language of the law, have a sound and disposing mind and memory. In other

words, he ought to be capable of making his will, with an understanding of the nature of the business in which he is engaged; —a recollection of the property he means to dispose of;—of the persons who are the objects of his bounty, and the manner in which it is to be distributed between them. It is not necessary, that he should view his will with the eye of a lawyer, and comprehend its provisions in their legal form. It is sufficient, if he has such a mind and memory as will enable him to understand the elements of which it is composed—the disposition of his property in its simple forms. It is the business of the testator, to dictate the purposes of his mind; and of the scrivener, to express them in legal form. In deciding upon the capacity of the testator to make his will, it is the soundness of the mind, and not the particular state of his bodily health, that is to be attended to. The latter may be in a state of extreme imbecility, and yet he may possess sufficient understanding to direct how his property shall be disposed of. His capacity may be perfect to dispose of his property by will, and yet very inadequate to the management of other business; as, for instance, to make contracts for the purchase or sale of property. For most men, at different periods of their lives, have meditated upon the subject of the disposition of their property by will; and when called upon to have their intentions committed to writing, they find much less difficulty in declaring their intentions, than they would in comprehending business in some measure new. The soundness of the testator's mind, is to be judged of from his conversation, or from his actions at the time the will is made, or from both taken together. It is not sufficient, per se, that he should be able to describe his feelings, or to give suitable answers to ordinary questions. This he may do, and yet the mind may be too much diseased, to enable him to dispose of his estate with understanding and discretion. It must also be remembered, that the fact of competency is to be decided by the state of the testator's mind, at the time when the will was made. And although evidence of the state of his mind, and of his bodily health, before and after that time, may be given, in order to shed light upon its condition at that period, still, such evidence is no otherwise to be regarded. For, although it should be proved, that at a prior or subsequent day, he was incapable of making a will from the effect of a temporary cause, such as fever and the like, it will not follow, that he was so when the will was executed. In weighing the evidence of sanity, that of the attesting witnesses is most to be regarded; because it is more likely, that they should be attentive to the conversation and actions of the testator, than mere bystanders, who do not feel themselves particularly connected with the transaction. On the other hand, the subscribing witnesses are, in some measure, parties to it; and there are few persons so ignorant as not to know, that the sanity of the testator is essential to the validity of his will.

As to the subject matter of the testimony, it may be well to remark, that the mere opinions of the witnesses are entitled to little or no regard, unless they are supported by good reasons, founded on facts which warrant them in the opinion of the jury. If the reasons are frivolous or inconclusive, the opinions of the witnesses are worth nothing. To this, as a general rule, the opinions of medical men, even although they did not see the testator, may be considered as an exception. A physician may, with some degree of accuracy, form an opinion of the nature of the disorder, and its probable effect upon the mind, where the symptoms are truly stated to him; because, from a long course of experience and observation, by himself and others of the profession, such have been the ordinary effects of these symptoms. But, to entitle such opinions to the regard of a jury, they should be satisfied by the other evidence in the cause, that the symptoms did exist, in the particular case under consideration. And if the opinions of these professional gentlemen, should differ materially, as to the ordinary effects of certain symptoms, the jury must weigh their evidence, as in other cases, and decide according to the opinion they may form of the comparative judgment, learning, and experience of the witnesses themselves. In this case, the physicians who have given testimony, have differed essentially from each other, in the opinions delivered to the jury; and there is no inconsiderable collision in the evidence of the other witnesses, respecting the material symptoms of the disorder; which, it is agreed on all hands, caused the death of the testator. It is proper to observe, upon this subject, that the opinion of the physician, who attended the testator during his last illness, is, for the most obvious reasons, always entitled to more regard than the opinions of physicians who had not this advantage. If the jury should be of opinion, that the testator was not competent to make his will, they will of course find for the defendant. If they should not be of this opinion, they will then inquire, 2dly, whether the will in question, was obtained from him by fraud, or circumvention of any kind.

It is contended, in support of the charge of fraud, that the testator is proved to have been for a long time in the habit of using spectacles; and that he was without them on the evening when his will was executed; —consequently, that he could not have read the will himself, after it was written; and that the evidence lays strong ground for believing, that the will was not read to him by the person who wrote it. It is further insisted, that the unnatural disposition of so

large a portion of the testator's estate, from an only and beloved daughter, to persons less nearly related to him, and this, in many respects, in opposition to previously formed resolutions, not shown to have been changed, and to declarations in proof of such resolutions,—and the bequest of a considerable property to the wife of the person who drew the will;—unitedly establish the charge of fraud and circumvention. That these circumstances, if proved to the satisfaction of the jury, deserve their serious consideration, is unquestionable. For, although fraud is never to be presumed, yet it is not necessary to prove it by direct and positive proof. Fraud most commonly veils itself in mystery; and it is by circumstances only, that it can in general be detected and brought to light. It should, nevertheless, be recollected, that these circumstances should be so strong, when combined and examined, as to satisfy the jury of the existence of the fact they are adduced to establish. It will not do, if they affect the judgment with nothing more than doubt and suspicion.

The charge of fraud is repelled by the plaintiff upon the following grounds:—1st. That Mr. Harrison, who wrote the will, did not obtrude himself upon the testator, but was sent for, and confided in, by him, to perform this service, as he before had done other professional services.—That it was written by the direction of the testator, who acknowledged to the witnesses, that Mr. Harrison had not been officious in the business. 2d. That the testator declared, before the will was made, that he had arranged and digested the disposition of his property in his mind, and required only some person to commit it to writing. 3d. That Mr. Harrison was in the room with the testator for three or four hours, and had, therefore, abundant time to write and to read over the will to him. And lastly, that the testator, after signing the will, acknowledged to the witnesses that it was his will; and added, that he was perfectly acquainted with its contents; and being asked by Mr. Harrison who was to take care of it, he answered— "You, of course." Mr. Harrison is the sole executor and trustee of the whole estate. It is insisted by the counsel, and we think with great weight, that, if the testator knew what he was about, and was possessed of sufficient understanding to make a valid will, his acknowledgments to the witnesses, and his direction to the executor to take charge of the will, amount to strong and persuasive evidence that he was acquainted with its contents. Whether the grounds of the plaintiff's and defendant's arguments are made out by the proofs in the cause, you must decide. There is considerable contradiction in the testimony of the witnesses, on one side and on the other. It will

be your duty to reconcile them as far as you can; and, in weighing evidence, to compare not only the credibility and characters of the opposing witnesses, but their judgment and opportunities of giving correct information respecting the facts they have related. You are to say, whether John Sinnickson had a sufficient capacity to make a testamentary disposition of his real estate, with discretion and understanding, at the time when this will was executed by him; and if he had such capacity, then, 2d, whether this is his will, or whether he was induced to execute and acknowledge the same by fraudulent practices, or imposition of any kind. If you find the first question in the negative, or the last in the affirmative, your verdict ought to be for the defendant; if otherwise, you should find for the plaintiff. In weighing the evidence, should you think it doubtful, or balanced, you ought to incline in favour of sanity, and against fraud.

Verdict for plaintiff.

The defendant's counsel tendered a bill of exceptions to the opinion of the court, in rejecting the record of the sentence of the prerogative court, against the probate of his will, as a testament of personal property; and, also, to that part of the charge, in respect to the alleged necessity of proving that the will was read to the testator.

WASHINGTON, Circuit Justice. A bill of exceptions to the opinion of the judge, who tries, at nisi prius, the issue directed from the court of chancery, is quite a novelty. The practice in England is, for the judge to send to the court of chancery, with the verdict, the notes taken at the trial; and if the chancellor is dissatisfied with the verdict, either because improper evidence was admitted, or legal evidence rejected; or because of the evidence given to the jury, or the opinions of the judge at nisi prius, he will direct a new trial, and sometimes set the verdict aside. We see no reason, why the practice should be different, because the issue is tried by the same court which directed the issue. The only question will be, ought a new trial to be granted? And the evidence, and all the proceedings at law, being before the same judges, it cannot be necessary, nor would it be proper, to present them for reconsideration and re-examination, in any other form, than on a motion for a new trial.

[NOTE. In Case No. 6,140 a plea that defendants were not properly served with process was supported, and the plaintiff given leave to amend. A demurrer to the bill for want of parties was sustained in Case No. 6,143, and the plaintiff again given leave to amend. In Case No. 6,142 a new trial of the issue to determine the validity of the will was awarded.]