### *Ex parte* WM. SIMONTON et al.

1. A person committed for felony, who shall not be tried at the next stated term of the court where the offence is cognizable, is entitled to be set at liberty on bail, unless it appear that the witnesses for the State could not be produced, or that the defendant assented to the delay.

2. The word *may*, when used in a statute, means *must* or *shall*, in those cases where the public interest and rights are concerned, and where the public or third persons have a claim *de jure*, that the power designated should be exercised.

Motion for a writ of *habeas corpus.*

The petitioners presented to the court, a transcript of the record of the Circuit court of Tuskaloosa, being the same which they laid before the court on a previous day, accompanied by a petition addressed to the honorable Peter Martin, judge of the third circuit, and praying a writ of *habeus corpus*, with a view to their discharge, on bail, from the jail of Tuskaloosa county. In their petition, they allege that they were indicted for the crime of murder, at the Spring term, eighteen hundred and thirty-nine, of the Circuit court of that county—that the Attorney General, as the representative of the State, and themselves, were severally ready for trial, and so informed the court; yet the presiding judge declined the trial of their case, and remanded them, for safe keeping, to their present place of confinement, though they urged to the court, at a proper time, and in a proper manner, their right to, and their readiness to give bail.

The judge awarded a writ of *habeas corpus*, pursuant

Ex parte Wm. Simonton et al.

to the petition, on which the bodies of the petitioners were brought before him; whereupon, an order was made, disposing of the application for bail, as follows:

" The within application to admit the prisoners to bail on the legal ground set forth in the petition, is refused, and the prisoners remanded to jail.

" It is considered by the court, that the questions of law arising in this case, are novel and difficult, but doubting the legal power to refer the same,—it is, at the request of the prisoners, and with the assent of the Attorney General, referred for the revision of the Supreme Court.

"June 13th, 1839.                    P. MARTIN."

Upon this state of facts, the petitioners moved this court for a writ of *habeas corpus*, that they might be brought up here and admitted to *bail*.

*Porter*, for the petitioners.
*Attorney General*, contra.

COLLIER, C. J.—The petitioners predicate their motion for bail, upon the *second section* of the act of eighteen hundred and twenty-seven, entitled " an act to amend an act, entitled ' an act for the more effectual preservation of personal liberty.' "   That section is in these words:

" If any person shall be committed for treason or felony, and shall not be tried at or before the next stated term of the court where the offence is properly cognizable, it shall be lawful for the said court, upon the last day of the term, to set at liberty such prisoner on bail, unless it appear on oath or affirmation, that the witnesses for the State, mentioning their names, could not be produced;

and if such prisoner shall not be tried at the second sta-
ted term after his or her commitment, unless the delay
happen on the application, or with the assent of the de-
fendant, he or she shall be discharged from imprisonment
on bail: *Provided*, that this act shall not be so construed,
as to prevent a prisoner committed for a capital offence,
from being bailed at or before the first stated term, un-
der the existing laws."

The only question that can arise in the construction of
this statute is, whether the terms "shall be lawful," in-
vest the court with *a discretion*, to be controlled by the
circumstances of every case, or whether they impose *a
positive duty*, to be performed in every case coming with-
in the terms of the act. By the 17th section of the 1st
article of the constitution, it is declared that "all persons
shall, before conviction, be bailable by sufficient securi-
ties, except for capital offences, when the proof is evi-
dent, or the presumption great," *&c.* Under this consti-
tutional provision, it is clearly competent for the court,
in a case where "the proof is not evident, or the pre-
sumption great," to admit to bail a prisoner charged with
the crime of murder, even though it appear "on oath or
affirmation, that the witnesses for the State could not be
produced." But to determine the power of admitting to
bail, where all parties were prepared for, and the accus-
ed did not waive a right to a trial, to be a matter of ju-
dicial discretion, under the act, would involve the Legis-
lature in the absurdity of attempting to deprive the citi-
zen of a privilege clearly secured by the constitution; for
if the court may or may not, as judgment dictates, *in
every case, save that which is excepted,* admit a prisoner to

Ex parte Wm. Simonton et al.

bail, it is clear, that in the case excepted, the right is attempted to be taken away, without reference to the proof of guilt. Let us enquire whether, without doing violence to terms, we cannot relieve the Legislature from such an imputation.

The statute we are examining, it must be remembered, is amendatory of an act of a much earlier day. By the 6th section of the act of eighteen hundred and seven, entitled "an act for the more effectual preservation of personal liberty," it is enacted, " that if any person shall be committed for treason or felony, and shall not be indicted and tried, at or before the next stated term of the court where the offence is properly cognizable, it shall be lawful for the said court, upon the last day of the term, to set at liberty such prisoner upon bail, unless it appear to them, upon oath or affirmation, that the witnesses for the territory, mentioning their names, could not be produced; and if such prisoner shall not be indicted and tried, the second stated term after his or her commitment, unless the delay happen on the application, or with the assent of the defendant, he or she shall be discharged from imprisonment." We have thought it proper to place in *juxta-position,* the amendatory and amended act, that the difference between them might be the more readily seen. The amendment, so far as the meaning of the two acts is concerned, consists in the insertion in the act of eighteen hundred and twenty-seven, after imprisonment, the words " on bail," and the addition of the *proviso,* which, so far as it is material to the present enquiry, may be placed entirely out of view.

The objection to the old law was not, that it author-

9 P                     50

ised the discharge of a prisoner *on bail*, who was not tried at the first term, but it was, that it authorised his discharge at the second term *without bail*. That such was the fact, we are informed by our own recollection of the legislative history of the times, as well as by a comparison of the phraseology of the two statutes; and that the Legislature itself supposed, that the non-attendance of the State's witnesses afforded the only just ground for refusing to admit to bail a prisoner, whose trial was continued at the first term against his consent, we think is indicated by the 3d section of the act of eighteen hundred and thirty-one, " more effectually to secure trials in capital cases by impartial jurors," which provides that " no defendant shall hereafter be bailed in a capital case, for a failure of obtaining a jury for his or her trial." But apart from this, we very well remember, that the construction placed upon the act of eighteen hundred and seven, was to allow the prisoner to give bail, where his case was continued at the first term against his consent, unless the attendance of the witnesses for the State could not be procured. The Legislature being aware, no doubt, of this construction, passed the act of eighteen hundred and twenty-seven, in reference to it, and thus impliedly adopted its correctness.

Again: The act of eighteen hundred and seven, was doubtless borrowed from the *habeas corpus act of the* 31 *Car.* 2, *c.* 2, *sec.* 7, which is as follows: " that if any person, who shall be committed for treason or felony, plainly or specially expressed in the warrant of commitment, upon his prayer or petition in open court, the first week of the term, or the first day of the session of oyer and

Ex parte Wm. Simonton et al.

terminer, or general gaol delivery, to be brought to his trial, shall not be indicted sometime in the next term, sessions of oyer and terminer and general gaol delivery, after such commitment, the justices of the said court shall, upon motion in open court, the last day of the term or sessions, set at liberty the prisoner upon bail, unless it appear upon oath, that the witnesses *for the King* could not be produced the same term or sessions: and if such prisoner, upon his prayer, &c. shall not be indicted and tried the second term or session, he shall be discharged." This statute, it will be observed, is mandatory in its terms; and it was so understood by Lord Chief Justice Holt, in the case of The King vs. Yates,*(1 Showers' Rep. 186, 191,) in which he considered, that the express language of the act, could not be relaxed in favor of the King.

But it was argued for the State, that the statute of eighteen hundred and twenty-seven, does not take from the court, the right to exercise its own judgment as to the propriety of allowing bail,—that it does not command an act to be done, but merely gives an authority to do, or not to do it, as may be thought best. This argument, it is believed, is not defensible upon authority. The word *may*, when used in a statute, means *must* or *shall*, in those cases where the public interest and rights are concerned, and where the public or third persons have a claim *de jure*, that the power should be exercised.

In Alderman Backwell's case, (1 Vern. R. 152,) the words of the statute were, that "he *may* grant;" yet it was held, that they imposed upon the chancellor a positive duty to grant a commission of bankruptcy, on due

application and proof. In this case, the creditors had an interest in the application of the power. So, in the case of the King vs. Barlow, (2 Salk. 609; Carth. 293,) the Court of King's Bench construed the words *shall* and *may*, as being *mandatory*, " where the statute directs the doing of a thing for the sake of justice, or the public good." In that case, the church-wardens were indicted for not making a rate or assessment under the statute of the 14 Car. 2, ch. 12, sec. 18, for the reimbursement of some constables. The statute said, that they " shall have power and authority to make a rate," and it was construed to be peremptory, the constables having an interest in the exercise of the power. And in The King vs. The Inhabitants of Derby, (Skinner's Rep. 370,) it was held that *may*, in the case of a public officer, was tantamount to *shall*. The learned chancellor of New York, after reviewing these cases in the Newburgh Turnpike Company vs. Miller, concludes, that the principle to be deduced from them " is, that whenever an act to be done under a statute, is to be done by a public officer, and concerns the public interest, or the rights of third persons, which require the performance of the act, then it becomes a duty in the officer to do it"—(5 Johns. Ch. Rep. 113.) We are satisfied that the principle is correctly stated in that case, and is strikingly applicable to the statute of eighteen hundred and twenty-seven. There, the act provided for, is to be done by a public officer—it concerns the public interest; because the public are interested in the administration of criminal justice: and lastly, the rights of the petitioners themselves are concerned.

In every view in which the application has been pre-

sented for our consideration, we are of opinion, that the petitioners are entitled to *bail,* and do consequently award the writ of *habeas corpus.*