# REPORTS

OF

## CASES ARGUED AND DETERMINED

AT THE

## JANUARY TERM, 1848.

---

### HILL v. BARGE.

1. When a will is contested, either in chancery, or in the orphans' court, the heir is entitled to an issue of *devisavit vel non*, if he demands it.
2. When a will offered for probate is in the hand-writing of the person to benefitted by it, before the will can be admitted to probate, it must be satisfactorily established, that the testator knew its contents. If, in addition to the will being written by the beneficiary, other suspicious circumstances exist, such as extreme debility of the testator, and great confidence reposed by him in the writer, the demand of the law for proof of knowledge of the contents of the will, will be increased.
3. A will, to be attested in the presence of the testator, must be witnessed within his view. It is not necessary to prove that he actually saw the witnesses attest the will; it is sufficient if, from their relative position, he, could see them.

Error to the Chancery Court of Butler.

THE bill was filed by Reuben Hill, the plaintiff in error, to set aside a will purported to be executed by Josiah Hill,

brother of complainant. The bill alledges that the deceased was of unsound mind, and memory, for a considerable time previous to his death. That he was exceedingly weak in body and mind, and was influenced by John Barge to make the will, which was executed a few days before his death, he being then incompetent to make a disposition of his property. That complainant, his sister Prudence Watts, and Elizabeth, wife of John Barge, are the next of kin of the deceased, and that the will was admitted to probate by the orphans' court of Butler, on the 21st September, 1840, without notice to any of the next of kin. That Barge has obtained letters testamentary as sole executor, and has gone into possession of the estate.

The prayer of the bill is, that the will be set aside, and the estate distributed according to law.

The will, as admitted to probate, is made an exhibit, and is as follows:

I, Josiah Hill, of the county and State above written, being infirm of body, but of perfect mind, and sound memory, &c. &c., do make and declare this to be my last will and testament:

First—My worldly estate I give and devise as follows, viz: I give to my beloved sister, Prudence Watts, the east half of all my lands, in Sec. 18, T. 11, R. 12; also the west half of the North E. quarter of Sec. 19, T. 11, R. 12; also, my negro man Perry.

I give to my beloved sister, Elizabeth W. Barge, the west half of all my lands in Sec. 18, T. 11, R. 12; also the N. W. qr. of Sec. 19, T. 11, R. 12, containing 160 acres; also, the east half of the N. W. qr. Sec. 19, T. 11, R. 12; also, the following slaves, my negro man Richmond, his wife Fanny, and her nine children; my negro man Moses, and his sister Kate, and her six children, also my pleasure carriage and harness, my wagon and gear, my stock of horses and mules, cattle, hogs and sheep, my present growing crop of cotton, corn and fodder, together with my household furniture of every kind and description.

I give to my beloved brother, Reuben Hill, ten dollars, to be paid by my executors.

Hill v. Barge.

I give to my brother-in-law, Lewis Steele, for the affection I have for him, five hundred dollars, to be paid by my executors.

I do hereby constitute my trusty and beloved friends David Carter, and John Barge, my sole executors, &c.

In witness whereof, &c. I have signed and sealed, this the 25 of August, 1840.

Signed, sealed, published and declared, by the said Josiah Hill, to be his last will and testament, in the presence of us, who in his presence, and in the presence of each other, have hereto subscribed our names.          JOSIAH HILL, (seal.)

Attest, J. R. YEDELL,
          CHARLES T. PARTIN,
          ZABUD HOLMES,
          ABNER JACKSON,
          SILAS M. WOOTAN.

The will was admitted to probate on the 21st September, 1840, upon the proof of the due execution of the will, by the witnesses, Yedell and Holmes.

The defendant, John Barge, answered, and admitted the making of the will by the deceased, as stated in the bill, but says that the deceased lived eleven or twelve days after it was made. Admits the probate of the will as stated, and that citations did not regularly issue to the next of kin, as stated in the bill—admits that he has been appointed sole executor of the estate. Admits that he received the estate, and has disposed of the same according to the will. Has paid all the debts, made distribution of certain slaves, which the deceased, by deeds executed by him previous to the making of the will, had given to sundry persons, and has made a final settlement of the estate with the orphans' court.

He denies that the testator was of unsound mind, and memory, but insists, that he was fully capable of making a will, and that no improper influence was exerted over him. That about two months before his death, the testator requested defendant to get Walter H. Crenshaw, Esqr. to come and write the will, and that testator then said, he would dispose of the greater part of his property to defendant and wife. That he did apply to Crenshaw, but that Crenshaw was un-

87

able to attend. That the testator then requested him to write the will, which he did, in exact accordance with testator's instructions, who read it over carefully, and approved of it, and at the time of its execution, and publication, signed it in the presence of four of the witnesses, who witnessed it in his presence, he declaring it to be his will. That Wootan, the last subscribing witness, signed it soon after, also by his request.

He accounts for the preference given to him, and his wife, by the testator, by alledging that he was not on the kindest terms with the complainant, or John F. Watts, the husband of his sister Prudence—but that he and his wife attended on him during his life, and sickness, and that he thereby lost nearly the whole of one fall's practice as a phpsician. That himself and wife removed to his house, for the purpose of giving him their undivided attention, and remained with him for near three months, and until his death. He denies all fraud, &c., and demurs to the bill.

The wife of Dr. Barge also answered the bill, in substance the same as her husband. The testator had neither wife, or child, living with him at the time of his death.

Much testimony was taken on both sides, which is unnecessary to be here stated. Such portions of it, as are important will be found embodied in the opinion of the court.

The chancellor refused to direct an issue of *devisavit vel non*, at the request of complainant, and considering that the testimony established the sanity of the testator, and the due execution of the will, declared it a valid will, and dismissed the bill.

The complainant prosecutes this writ, and assigns for error—

1. The refusal to direct an issue of *devisavit vel non.*

2. The decree as made upon the proof.

WATTS and PRYOR, for plaintiff in error.

1. Whenever real estate is conveyed or devised by the will, so as to form the issue of *devisavit vel non*, the chancellor is bound to allow the issue to be tried out of chancery if asked for. [Kennedy v, Kennedy, 2 Ala. 571; Johnston, et al. v. Hainsworth, 6 Ala. 443.]

2. When the testimony is so conflicting as to make it difficult to arrive at a satisfactory conclusion, it would be error in the chancellor, not to allow the issue of *devisavit vel non* to be tried by a jury, and it would be error to divest the heirs at law of their rights without such a trial. [Kennedy v. Kennedy, and Johnston v. Hainsworth, *supra;* Rogers v. Rogers, 3 Wend. 503.]

3. Where a bill is filed for the purpose of setting aside a will, which has been admitted to probate in "common form," those who claim under the *will* , and who seek to establish it, become the *actors* in the cause, and are bound to prove every fact necessary to make it a good will. And no allegations are required to be made by the complainant, except to show by what right he litigates, &c. [Johnston, et al. v. Glascock and wife, 2 Ala. R. 218 ; Johnston v. Hainsworth, *supra.*]

4. A will written by the principal beneficiary, is void by the civil law ; and by the common law, such conduct creates a presumption against the act, and renders necessary proof of volition and capacity, as well as a knowledge on the part of the testator, of the contents of the will. And this is the case whether it be a will of personal, or of real property. [1 Myl. & K. 643 ; 2 Phillimore, 323 ; 1 Haggard, 384.] A proof of mere execution, and the calling of witnesses to attest, and saying "this is my will," will not be sufficient to rebut the presumption. See cases above, and Billinghurst v. Vickers, 1 Phillimore, 187, 199.]

5. The attestation of the witnesses must be in the presence of the testator. The fact that it is attested in the same room with the testator, is only *prima facie* evidence that it was done in his presence. [1 Lomax on Ex. 29, and authorities there cited ; 1 Metc. 349, and authorities there cited to this point.] If it be attested in the same room, yet if, from the relative situation of the testator as to his position, or physical ability, he could not, of his own power and will, without assistance from others, have seen the witnesses sign, it is not a good will. [1 Lomax 29, 25 ; 1 Leigh, 6 ; Dewey v. Dewey, 1 Metc. 349 ; Powell on Dev. 56-8 ; 1 Mod. & M. 12 ; 1 M. & S. 294 ; Russel v. Moor Falls, 3 H. & McH. 457.]

6. Where the testator's mind is shown to be weak, and at times to be incapable of making a will, if the will be written by another benefitted by it, the *will* will not be sustained, unless stringent proof is made, showing that the testator had a clear understanding, and a full knowledge of the contents of the will. [Ellliott's will, 2 J. J. Marsh. 342; Case of Cockran's will, 1 Monr. 263, and other cases cited above.]

Cook, contra.

As to the power and duty of the chancellor in sending out the issue, see Clay's Dig. 598, § 15; 6 Ala. R. 443.]

As to the mode of proceeding, see Johnston v. Glascock, 2 Ala. Rep. 218.

—The rule for exercising the discretion, &c., Kennedy's Heirs and Ex. v. Kennedy's Heirs, 2 Ala. 625 to 629, and 6 Ala. 443.

—The attestation, 1 Jarman Wills, 71 to 76, and note (1) on p. 75; Lomax, 29, 30; 3 Stark. Ev. 1686-7; and publication Ib. 1689.

—Fraud and capacity, 3 St. Ev. 1701-2.

—*Non compos*, 3 St. Ev. 1703-4-5, and note (1) last page.

—Importunity, 3 St. Ev. 1706, note (1.)

—Capacity, insanity, &c., 3 St. Ev. 1706-7, and notes.

ORMOND, J.—The chancellor having refused to direct an issue of *devisavit vel non*, on the application of complainant, and it being insisted that this is not a matter in the discretion of the chancellor, but is the right of the heir, whenever the validity of a will is drawn in question in a court of chancery, we will first address ourselves to the consideration of that question.

In England, this right is conceded to the heir, and an issue to try the validity of the will, is directed, as a matter of course. This results from the fact, that the court of chancery has no power to pass upon the validity of a contested will, the ecclesiastical courts having exclusive jurisdiction of the probate of testaments of personal property, and the common law courts, of devises. [3 Woodesson's Lec. 49, p. 286.]

At an early period in our history, this matter was regulated by statute. An act which was passed in 1803, and re-enact-

Hill v. Barge.

ed in 1806, gave to the orphans' court the exclusive jurisdiction of the probate of wills, both of real and personal estate, contains the following clause: "Within five years from the time of the first probate of any will, any person interested in such will, may by bill in chancery contest the validity of the same, and the court of chancery may thereupon direct an issue, or issues of fact, to be tried by a jury as in other cases; and in all such trials, the certificate of the oath of the witnesses, at the time of taking the original probate, shall be admitted as evidence to the jury, to have such weight as they may think it deserves: but after the expiration of the said five years, the original probate of any will, shall be conclusive, and binding on all parties concerned." [Clay's Dig. 598, § 15, and see the original act in Toulmin's Dig. 887, § 55.] It is therefore very clear, that the English rule can have no influence in the settlement of this question. Its solution must depend upon the true construction of the act just cited, which not only conferred on the courts of chancery, a jurisdiction unknown to the common law, but also introduced other important changes, of the law on this subject.

This act passed under the review of this court, in Johnston v. Glascock and wife, 2 Ala. 218, where it was held, that when a will is thus contested in chancery, those claiming under the will, become the actors, and are bound to support it affirmatively. To the same effect is Johnson v. Hainesworth, 6 Id. 450. But in neither of these cases, did the question now under consideration arise, which, it is evident from what has been stated, must depend upon the proper construction of the terms employed in the statute, in reference to an issue of *devisavit vel non:* "the court of chancery may, thereupon, direct an issue or issues of fact, as in other cases."

The ordinary meaning of the term *may,* in a statute, when it concerns the public interest, or the rights of individuals, is must, or shall; and is obligatory, or mandatory, on the judge, or officer, to whom it is addressed. [Ex parte Simonton, 9 Porter, 395, and cases there cited.] In addition, the act proceeds to state what kind of testimony shall be laid before the jury, and the effect they shall accord to it,

which would not have been done, if it had been discretionary with the chancellor, to direct an issue, or not, as he might think proper. Further, by the act of 1821, when the validity of a will is contested, the orphans' court is required to impannel a jury to determine its validity, (Clay's Dig. 304, § 35,) and it would be a strange result, if a party could obtain the probate of a will, without notice to the heir, or next of kin, in the orphans' court, and thereby deprive him of the right to a jury trial in chancery. The effect of the exhibition of such a bill as this, is to require those claiming under the will, to offer it again for probate, and it seem to us, from our entire legislation on this subject, that whether the inquiry is had in the orphans' court, or in chancery, the heir, or next of kin, is entitled to an issue if he demands it.

From this it results, that the chancellor erred in refusing to award an issue, when demanded by the complainant, and as the cause must be remanded, it is proper we should consider those questions of law, which have been argued by counsel, and which must necessarily arise in the further progress of the cause.

The will offered for probate was written by Dr. Barge, the husband of the principal beneficiary of the will. This fact undoubtedly creates a presumption against the validity of the instrument. Ordinarily, when a man of sound mind, and memory, executes a will, by signing, and publishing it, and calling on witnesses to attest it, the presumption is that he knew the contents, although it is not written by him. But when the will is written by the person intended to be benefitted by it, then, in the language of an eminent testamentary judge, "the presumption, and *onus probandi*, are against the instrument; but as the law does not render such an act invalid, the court has only to require strict proof; and the *onus probandi* may be increased by circumstances; such as unbounded confidence in the drawer of the will—extreme debility in the testator—clandestinity, and other circumstances, which may increase the presumption, even so much, as to be conclusive against the instrument. In the absence, however, of any circumstances of this sort, the demands of the law may be more easily satisfied. [Paske v. Ollat, 2 Phillimore, 323; see also Billinghurst v. Vickers, 1 Id. 199,

and Ingraham v. Wyatt, 1 Hagg. 384.] The case of Paske v. Ollat, came under the review of the Master of the Rolls, in Raworth v. Marriott, 1 M. & K. 643, who also held, that where the drawer of the will took a benefit under it, a jury trying the validity of the will, should be satisfied that the testator knew its contents; but he did not understand Sir John Nicoll, in Paske v. Ollat, to hold, that there must be direct, and positive proof of such knowledge, but that his knowledge of the contents of the will, might be established by circumstantial evidence.

This being the law applicable to this case, it will be the duty of the jury to say, whether the testator knew the contents of the will. The most usual, and most satisfactory mode of making this proof, is to show that the will was written pursuant to instructions given by the testator. Nothing of this kind appears in the testimony sent up with the record. It also appears, that the testator, at the time the instrument is alledged to have been made, was in a state of extreme debility, and had been for some time previous—that he labored under a most painful disease, to allay the anguish of which, he took large doses of opium—and that the drawer of the will was in possession of his confidence. These are all circumstances calculated to awaken suspicion, and increase the presumption which the law makes, from the mere fact that the will was written by the principal beneficiary, and increase the demand which the law exacts, of proof of knowledge on the part of the testator.

Still, it must be borne in mind, that all these circumstances of suspicion, and presumption of unfairness, may be removed by either positive, or circumstantial proof, of knowledge on the part of the testator of the contents of the will, and that it was written pursuant to his directions. But this proof should be so satisfactory, and convincing, as not to leave a reasonable doubt on the minds of the jury, that the testator knew its contents at the time of its execution.

It is further contended, that the will was not attested by the witnesses in the *presence* of the testator. The *statute* of this State, which, in respect to this matter, is substantially a copy of the 29 Charles 2d, requires, " that such last will and testament, be signed by the testator, or testatrix, or by some

person in his, or her presence, and by his, or her directions; and attested by three, or more respectable, (reputable) witnesses, subscribing their names thereto, in the presence of such divisor." [Clay's Dig. 597, § 1.]

The construction of this statute, is settled by numerous decisions, English, and American. The design of the statute, in requiring the attestation to be made in the presence of the testator, was to prevent the substitution of a surreptitious will. In the *presence* of the testator, therefore, is within his view. He must be able to see the witnesses attest the will, or to speak with more precision, their relative position to him, at the time they are subscribing their names as witnesses. must be such, that he may see them if he thinks proper to do so, and satisfy himself by occular demonstration, that they are witnessing the very paper he designed to be his last will. They may subscribe their names in the same room with the testator, and yet there may be such a physical barrier, or obstruction, between him, and them, tha the could not see what they were doing, and although in the same room with the testator, would not be in his presence, within the meaning, and intention of the statute. [Neil v. Neil, 1 Leigh, 6.] So also it has been held, that when the testator desired the witnesses to go in another room and attest his will, in which there was a window broken, through which he might see them, it was held, the will was well attested. [7 Bac. A. 10; see also, Casson v. Dade, 1 Bro. C. C. 99, and Davy v. Smith, 3 Salkeld, 395, to the same effect.] Lord Ellenborough, in Doe v. Manifold, 1 M. & S. 294, referring to Casson v. Dade, held, that it was not necessary the testator should actually see the witnesses attest the will, but that he must be in such a situation, that he might see, and then in favor of the attestation, it would be presumed that he did see. [Todd v. Winchilsea, 1 Mood. & M. 12, and same case, 2 C. & P. 488.]

In this case, it appears from the testimony, that the witnesses attested the will, at the request of the testator, in the same room with him, and but a short distance from him. He was lying in bed, his head propped up with pillows, his face turned from the attesting witnesses. Some of them say he did not see them attest the will, as their backs were towards

him, and that by turning his head he could have seen them standing there—there was no obstruction intervening between him and them.   It has already been stated, and shown by the cases cited, that it is not necessary to prove that the testator actually saw the witnesses subscribe their names—this would, in most cases, be impossible to be shown.   It is sufficient, if from their relative position, he could have seen them.   If then, the testator, by moving his head on the pillow, could have seen the witnesses subscribe their names to the paper designated by him as his will, it will be an attestation in his presence, within the meaning of the statute.   It will be for the jury to determine this fact, also, from the evidence which may be adduced.

Testimony was taken on both sides, as to the capacity of the testator to make a will, at the time this will was executed, but no question of law is raised in argument on this point. The jury must be satisfied from the proof, that the testator was of sound mind, and disposing memory, before they can find the instrument a valid testament.

Decree reversed, and cause remanded.