## McCARTNEY'S EXECUTORS vs. BONE AND WIFE.

[BILL IN EQUITY TO SET ASIDE PROBATE OF WILL.]

1. *Probate of will, duly executed and attested, set aside on account of insufficiency of proof as to testator's knowledge of its contents.*—Where it appeared that the testator, several months before his death, when his health began to decline, executed a will, by which he bequeathed his entire estate to his mother, who was his sole heir-at-law and next of kin; that on the day before his death, being then very feeble and greatly prostrated by sickness, he executed another will, by which he gave a legacy to his uncle, the pro-

ponent, who was also his attending physician and guardian, and who had never made a settlement of his guardianship; that no person was present when the latter will was prepared, except the proponent and the attorney by whom it was written, the attorney having been sent for by the proponent; and that the testator had not been heard to express any dissatisfaction with the former will,—*held*, that the probate of the latter will was properly set aside, because it was not affirmatively shown that the will embodied instructions given by the testator, or that he was made acquainted with its contents when he signed it.

APPEAL from the Chancery Court of Madison. Heard before the Hon. JOHN FOSTER.

THE bill in this case was filed by Matthew H. Bone, and Martha, his wife, against the executors and legatees of Fleming J. McCartney, deceased, and sought to set aside the probate of the said McCartney's will, which had been admitted to probate by the probate court of said county. The testator was the son of Mrs. Bone by a former husband. The executors of the will were Dr. Fleming Jordan and Robert C. Brickell; the former being the uncle and guardian of the testator. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants, setting aside the probate of the will; and his decree is now assigned as error. The material facts of the case are stated in the opinion of the court.

HUMPHREYS & TRACY, with JAMES PHELAN, for the appellants:

The following facts are affirmatively shown by the evidence in the case—that the will was signed by the testator in the presence of the subscribing witnesses, and attested by them in his presence; that the testator was of sound mind at the time he signed the will, as also before and after its execution; that the will was made in conformity with the previously expressed intentions of the testator; that the will is natural in its disposition of property, making ample provision for the testator's mother, with remainder on her death to his cousins, who were his next of kin; that the testator disliked his mother's present husband, and always said that he should not have his property; and that he was a man of firm determination,

who could not be easily induced to change his mind. Moreover, the allegation of undue influence is denied by the answers, and entirely unsupported by proof.

1. All the statutory formalities are proved to have been strictly complied with in the execution of the will. Section 1610 of the Code, so far as it relates to the execution of the will, is a substantial transcript of the statute 29th Charles II, ch. 3, which required no publication of the will by the testator, as a separate and distinct act from an observance of the statutory formalities.—Roberts on Wills, 101; 26 Wendell, 330; 7 Taunton, 360; 8 Paige, 490; 3 Atk. 161; 7 Bing. 457; 3 Hagg. 557; 1 Phil. (Ec.) Rep. 191; 6 Bing. 310. A will may be good, under the statute, without any words of the testator declaratory of the nature of the instrument, or any formal allusion to, or recognition of it.—2 Greenl. Ev. § 632; 1 Jarman on Wills, 71; 6 Bing. 310; 7 Bing. 457; 4 Kent's Com. 515. On proof of the signature, it will be presumed that the testator knew the contents of the will.—1 Phil. (Ec.) R. 191; 3 ib. 476; 3 Hagg. 587. It is not necessary that the subscribing witnesses should be acquainted with the contents of the will.—19 Ala. 80. Nor is it necessary to prove that the will was read over to the testator, or that he knew the contents of it.—1 Phil. (Ec.) Rep. 187; 1 Greene's Ch. R. 549.

2. A compliance with all the requisitions of the statute, as to execution and attestation, having been affirmatively shown, the probate can only be resisted on proof of undue influence, or of testamentary incapacity on the part of the testator; neither of which is shown. The words *unsound mind*, as used in the statute, are legal terms, and import a total deprivation of reason. There is no grade of understanding, between the highest and the lowest, which incapacitates a testator. A capacity to recollect, discern, and feel the relations of family, &c., is sufficient. Mere weakness of mind, short of insanity, is not sufficient to avoid a will.—26 Wendell, 255; 6 Geo. 357; 3 Denio, 37; 5 Johns. Ch. 158; 4 Wash. C. C. 262; Shelford on Lunacy, 37; 4 McCord, 185; 9 Conn. 102; 2 Add. (Ec.) R. 441; Chitty on Contracts, 135; 2 Kent's Com. 452;

10 Serg. & R. 84; 1 Jarman on Wills, 50. A just distribution of his property by a testator, in accordance with the natural affections, and consistently with previously expressed intentions, furnishes very strong evidence of capacity.—26 Wendell, 313; 2 Add. (Ec.) 441; Wharton's Med. Jur. 13; 1 Jarman on Wills, 69.

3. On the question of undue influence, see 2 Phil. (Ec.) R. 551; 22 Ala. 529; 28 Ala. 100.

L. P. & R. W. WALKER, *contra:*

It is essential to prove that the testator knew, at the time of execution, that it was his will.—Gerrish v. Nason, 22 Maine, 438; Swett v. Boardman, 1 Mass. Rep. 258; 2 Greenl. Ev. § 675.

If the testator be incapable at the time of reading his will, no matter from what cause, it must be shown affirmatively that he was acquainted with the contents.—Day v. Day, 2 Greene's Ch. 549.

Where testator's capacity at time of execution is in any degree doubtful, there must be proof of instructions, or reading over.—Tomkins v. Tompkins, 1 Bailey, 92; Billinghurst v. Vickers, 1 Phil. 187; Harvey v. Anderson, 12 Geo. 69.

If there is reasonable ground to believe that the will was not read by the testator, or that there was fraud or imposition of any kind, (though not sufficient to establish a case of fraud or undue influence,) knowledge of contents must be distinctly shown.—Harrison v. Rowan, 3 Wash. C. C. 585; Weir v. Fitzgerald, 2 Bradf. 42.

The presumption is strong against a party preparing a will, who takes an interest under it, and the court will require proof of knowledge of contents; and if testator was feeble, and fiduciary relations existed, the demand for the proof is much stronger.—Tomkins v. Tomkins, 1 Bailey, 92; Hill v. Barge, 12 Ala. 687; Parke v. Ollatt, 2 Phil. 323; Ingram v. Wyatt, 1 Hagg. 384; Beall v. Mann, 5 Geo. 456; Baker v. Batt, 1 Curteis, 125; Sankey v. Lilly, 1 Curteis, 397. The inference is clear here, that the will was written at Jordan's instance; that he suggested its provisions, and that he sent for the attorney.

He was physician and guardian, and he and his children take an interest under the will.

The court must be satisfied, not only that testator was of testable capacity, but that he had an intelligent understanding of the contents and effect of the instrument. Where capacity is weakened, and there is any evidence of influence or imposition, proof of knowledge of contents is required. In case of enfeebled mind, (still having capacity,) the will must be shown to have been fairly made—to have been the testator's spontaneous act, without interposition of others, and to have accorded with previous intentions.—Burge v. Hill, 1 Brad. 360; Mowry v. Silber, 2 Brad. 133; Moore v. Moore, 2 Brad. 261.

In case of a will made by interrogatories, the court is very guarded in requiring proof of capacity, spontaneity, and volition.—Greene v. Skipworth, 1 Phill. 53; Rogers' Ec. L. 912–13.

Where a will is made *in extremis*, evidence of volition and capacity, incontestable and incontrovertible, is required.—Rogers' Ec. Law, 907; 1 Hagg. 262, 310, 227; 2 Hagg. 169.

As to the vigilance used in cases where fiduciary relations exist between testator and writer, or procurer, and as to other points in the case, see particularly the following cases: Wilson v. Moran, 3 Brad. 172; Carroll v. Norton, 3 Brad. 291; McGuire v. Kerr, 2 Brad. 244; Dent v. Bennett, 7 Simons, 539; Gale v. Wells, 12 Barb. 84; Greville v. Tylee, 24 Eng. L. and E. 53.

STONE, J.—We feel authorized by the proofs in this record to lay down the following propositions as established:

1. That Fleming J. McCartney, the testator, did, on the 11th June, 1853, execute by signing the paper propounded as his will, in the presence of two subscribing witnesses; and that they subscribed their names as witnesses in his presence;

2. That at the time testator was notified that the paper he signed was his will;

3. That Mr. McCartney, although at the time in very

low health, cannot be pronounced to have been legally incompetent to make a will;

4. That there is no evidence in this record, which, as an independent proposition, authorizes us to affirm that this will was obtained by undue influence.

It is contended for contestants, that the circumstances of the execution of this will are such, as to cast on the proponents the necessity of proving, either that the will was drawn pursuant to instructions previously given, or that it was read over to the testator. In considering this question, it is necessary that we should first ascertain and settle the controlling facts, as established by the evidence. We do not propose to consider the testimony of the numerous witnesses *seriatim*, but to state briefly the principal facts which it establishes.

Some interrogatories propounded to witnesses were objected to. We find in the record, however, no exceptions filed to any part of the testimony; and hence we infer that the judgment of the chancellor was not asked' upon the relevancy or legality of any of the proof. Under these circumstances, we will not consider this question. Jordan v. Jordan, 17 Ala. 466.

Testator, at the time of his death, was twenty-two or twenty-three years old. He left surviving him neither wife, child, brother or sister, nor descendant of them. His mother, a second time married, survives him. He left a valuable real and personal estate.

Some months before the death of Mr. McCartney, his health gave way; and for more than a month, it is obvious that he entertained apprehensions that he could not recover. He spoke freely of making his will; spoke of his uncle, Fleming Jordan, in complaining terms, as having been his guardian, and made a fortune out of his estate; as being indebted to him, and that he could not obtain a settlement from him; expressed a determination to make ample provision for his mother, who seemed to be the chief, if not the sole object of his solicitude. About this time he made a will, which, the testimony tends to show, gave to his mother his entire estate. We hear no complaint of, or dissatisfaction with this will,

until the evening of the 10th of June, two days before his death.

During the illness and decline of Mr. McCartney, the proponent, Dr. Jordan, who was a physician, was much with him; and as the disease became more malignant, his attentions were correspondingly increased. Testator continued to manifest an interest in his worldly affairs, until about a week, or a little less, before his death. From that time forth he was laboring under great physical exhaustion, and, with the exception of making a second will, after stated, he gave no attention to business. He conversed but little, and usually only in reply to remarks addressed to him. He lay, say the witnesses, usually with his eyes closed, and volunteered to speak, only when he desired something done to alleviate his suffering. During this period, his principal concern was for his spiritual welfare.

On Friday afternoon, the 10th, Dr. Jordan had been some time with his patient; and the testimony tends to show that no other person was present. He left him late in the evening, taking with him a messenger on the horse of testator, to be dispatched by Dr. Jordan from his house, the next morning, for the attorney to write another will. The only evidence of a change of testamentary disposition, desired by Mr. McCartney, is furnished by Dr. Walker, the then partner of Dr. Jordan, who says, that when Dr. Jordan came from deceased on the evening of the 10th, he informed him (witness) that McCartney was dissatisfied with the will, and had concluded to send for his attorney, that a second one might be prepared.

On the 11th, the attorney came. He and Dr. Jordan were in the room with the testator while the will was being written; and two subscribing witnesses were called in, saw the will signed, and attested it as witnesses. The testimony fails to show that any instructions were given by Mr. McCartney, as to the frame of the will or its dispositions; and it fails to show that the will was read over either by or to him. He was then so feeble, that it is scarcely conceivable that he did or could read the will himself. We are not informed that the testator's mother,

or any other friend, save those mentioned above, was called in during the preparation or execution of the will. This will makes Dr. Jordan a legatee, but we have no means of ascertaining the value of the legacy.

Under the circumstances disclosed in the proof, we do not hesitate to declare, as our opinion, that testator's capacity for business was greatly impaired; that the only evidence of a change in his wishes, is furnished by what Dr. Jordan said; that Dr. Jordan was the chief counsellor in the preparation of that will, as he was the chief instrument in having the attorney brought for the purpose; and that this was done without the presence, sanction, or advice of Mr. McCartney's mother, who was in the house, and was the chief object of his bounty. It may also be here repeated, that Dr. Jordan had been guardian of testator's property, and no settlement of the guardianship had ever taken place.

In the case of Billinghurst v. Vickers, 1 Phil. 199, Sir John Nicholl said, "that where the capacity is doubtful at the time of execution, and there is no evidence of instructions, especially when the act is done through the agency of the party interested, the proof of mere execution is insufficient."

In the case of Day v. Day, 2 Greene's Ch. 549, testator was in *extremis*, but of testable capacity. The proof of execution was satisfactory. The will was prepared by one who took a benefit under it; and there was no evidence of instructions, or that testator was made acquainted with the contents. On the contrary, it was made almost certainly to appear that the will was not read over. The court pronounced against the will, saying, among other things, "It becomes the duty of the person offering the will, to show that the contents of the paper were fully made known to the testator." The court said, the same rule applied when testator was incapable of reading the will, either from blindness, sickness, or any other cause.

In the case of Tompkins v. Tompkins, 1 Bailey, 92, the court said, "When the capacity of a testator at the time of the execution is in any degree doubtful, there must be proof of instructions, or of reading over."

McCartney's Ex'rs v. Bone and Wife.

In McGuire v. Kerr, 2 Brad. (Sur.) Rep. 244, the court said, "When, at the time of execution, the decedent was in a state of stupor, though perhaps capable of being aroused so as to perform a sensible action, the proof to establish a rational act should be of the clearest character; and that failing, probate should be denied."

See, also, Rogers' Eccl. L. 906, where it is said, "A will made in *extremis*, and almost in *articulo mortis*, may be good, if its validity be established by sufficient evidence of volition and capacity; but, if the facts of the case present grounds for suspicion, evidence of volition and capacity, incontestable and incontrovertible as to its truth and effect, must be required, if the court intends to exercise a proper vigilance, and guard with necessary jealousy the beds of dying persons against fraud and circumvention."

To the same effect are the cases of Harrison v. Rowan, 3 Wash. C. C. 580; Brogden v. Brown, 2 Add. (Eccl.) 442; Gerrish v. Nason, 22 Maine, 438; McNinch v. Charles, 2 Rich. Law, 229; Burge v. Hill, 1 Bradf. (Sur.) 360; Harvey v. Anderson, 12 Geo. 69; Ingram v. Wyatt, 1 Hagg. 384; Sankey v. Lilly, 1 Curteis, 397; Mowry v. Sibler, 2 Bradf. (Sur.) 133; Moore v. Moore, *ib.* 261; Hill v. Barge, 12 Ala. 687.

Another principle should not be lost sight of. We allude to the double fiduciary relation which Dr. Jordan sustained to the testator, both as his guardian and attending physician. In Gale & Wising v. Wells, 12 Barb. (S. C.) Rep. 84, the court said, "When a guardian, soon after the ward becomes of age, but while the latter is still at college, and before the guardian has settled his accounts with his ward, procures the ward's endorsement to a note, made by the guardian for the payment of a precedent debt owing by the guardian to a third party, who takes such note and endorsement with notice of the circumstances, a recovery cannot be had on such endorsement."—See Hatch v. Hatch, 9 Vesey, 296; Wilson v. Moran, 3 Bradf. (Sur.) 172.

So, in the case of Greville v. Tylee, 24 Eng. Law and Eq. 53, a will was prepared and written by a medical man

in attendance on a testatrix, at that time dangerously ill, and without professional advice, by which he was made the principal object of the testratrix's bounty, to the exclusion of her near relations. The testimony was clear, that testatrix had intended to provide for Dr. Greville; but it did not appear that she intended to make him the principal object of her bounty. The court pronounced against the will, remarking that Dr. Greville had nobody but himself to blame; that the interests of the public required that his conduct should be scrutinized with the utmost jealousy.—See, also, Dent v. Bennett, 7 Simon, 539; Paske v. Ollatt, 2 Phill. 323; Baker v. Batt, 1 Curt. 125; Hill v. Barge, 12 Ala. 687.

Applying these principles to this case : Mr. McCartney, when he executed the paper, which is claimed as his will, was almost in *articulo mortis*, and must have relinquished his chief hold upon life ; from protracted disease and great physical exhaustion, he may be said to have sunk into a general stupor, though capable of being aroused to consciousness, adequate, for the time, to the transaction of ordinary business; there is no evidence that he, *sua sponte*, conceived any desire to change or modify the disposition of his property, made previously, and with deliberation; his guardian and attending physician, and who was probably benefited by the change of will, seems to have been alone with him, during the time when it is alleged he underwent this change of purpose, and when the second will was being prepared ; and his mother, who was obviously dearest to him, though in the house, as we have the right to presume, does not appear to have been called in or consulted. To this we may add, that all visible and outward agency and preparation for the draft and execution of a second will were performed, so far as the testimony informs us, by Dr. Jordan, although testator had a mother, step-father, and overseer on the premises. While we concede that all these surroundings are capable of satisfactory explanation, consistent with the purest integrity, still, as a matter of public policy and sound judicial morality, we hold, that they cast on the proponent the *onus* of showing by affirmative proof—either facts

or circumstances—that testator had either given instructions, which were embodied in his will, or that he was made acquainted with the contents thereof. The proof in this record failing in this particular, the decree of the chancellor is affirmed.

R. W. WALKER, J., having been of counsel, did not sit in this case.