## *EX PARTE* LEONARD.

### *IN RE* ESTATE OF BOWEN.

1. **WILL SIGNED BY DIRECTION—WITNESSES.**—A person who signs the name of testatrix to her will by her express direction, is a competent witness to its execution, and may sign his name thereto as one of the three subscribing witnesses.

2. **IBID.—EXPRESS DIRECTIONS.**—Under the statute of this State regulating the execution of wills, it must be signed by the devisor, "or by some other person in his presence, and by his express directions." *Held,* that if the whole conversation between the testatrix and the person who signed her name to the will (as it occurred at the time the instructions as to the will were given, and a few hours afterwards at the time of execution) amounted to an express declaration, it should be construed as an express direction by testatrix to such person to sign her name to the paper.

3. **IBID.—SIGNATURE.**—Where S. S. K., the person who prepared the will, signed testatrix's name in her absence, and then in her presence and in the presence of the witnesses added to testatrix's name the words, "by S. S. K., by request," the will was sufficiently signed for testatrix, and was valid.

Before NORTON, J., Laurens, February, 1893.

The opinion states the case.

*Mr. W. H. Martin,* for appellant.

*Mr. H. J. Haynsworth,* contra.

November 3, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On August 16, 1890, Emeline Bowen, widow, departed this life. On September 6 thereafter, a paper writing, purporting to be her last will and testament, was filed in the office of the probate judge of Laurens County,

who admitted the same to probate in common form; and on October 20, 1891, Albert Dial and others, the heirs and distributees of deceased, if she died intestate, filed their petition that Benjamin E. Leonard, the party producing said paper, be required to prove the same in due form of law on or before November 15 thereafter. On November 11, 1891, said Leonard filed his petition accordingly, and on June 23, 1892, the matter came on for a hearing in the Probate Court, and after hearing the testimony of the subscribing witnesses and others both for and against the said will, the probate judge filed his decree, admitting the same to probate in due form of law. Whereupon Albert Dial, Elizabeth Teague, and others appealed to the Court of Common Pleas of the said county.

At the February term of the court thereafter, the proceedings on appeal came on for a hearing before his honor, Judge Norton, who submitted two questions to the jury: (1) Was the paper duly executed as a will? (2) Was Mrs. Emeline Bowen at the time of executing the will competent to make a will? On these issues of will or no will there was much testimony, covering nearly 100 pages of printed matter, reported by the stenographer as it fell from the witnesses, and, of course, it cannot be restated here. But in order to make the points intelligible, it will be necessary to make a short and condensed statement of facts as developed.

It appeared that Mrs. Bowen, the testatrix, was very sick, with what was called typhoid fever, and that about noon of August 16, 1890, she asked her attending physician, Dr. S. S. Knight, to prepare her will for her, and gave him minute instructions as to how she wished it drawn, of which the doctor took rough notes. Among other things, she asked him if it would not do for him to sign her will for her, as she was so nervous; to which he replied that he thought so. Later the doctor drafted the will; and as he testifies, he first prepared it to be signed by "a mark," by leaving a blank space and writing "her mark" above and below respectively; it is not very clear whether he then wrote the name of "Emeline Bowen" in preparing for the mark, but we think it probable that he did. After having done this, the doctor says he concluded that it

would be best not to sign with "a mark," and so erased the words "her mark." About twilight he procured two other witnesses, and went to Mrs. Bowen's room, which was lighted by a lamp. He then produced the paper, and told Mrs. Bowen that it was her will, and was ready to be executed. He recalled to her attention what she had said about signing the will, by asking her, "Shall I sign the will for you?" to which she answered, "Yes," and he signed the will for her. It is not quite clear, whether he did this by writing then all the words, "Emeline Bowen by S. S. Knight by request," or whether the name, "Emeline Bowen," having been previously written in preparing the will for "a mark," and not having been erased, the signing was merely by writing under the name, "Emeline Bowen," the other words—"by S. S. Knight by request." Then each of the witnesses in turn signed the paper, including Dr. Knight, who signed the paper for the deceased. All this was done in the presence of the testatrix, who was lying in bed, with her face towards the little table in the room on which the paper rested, in full view of all who chose to use their senses. Mrs. Bowen died on the next day night, within thirty hours after the signing of the paper, &c.

After a full and careful charge, the jury found both issues of fact referred to them in the affirmative—that Mrs. Bowen was competent to make a will; and that the will was executed according to law. The contestants did not except to the finding on the second issue—that Mrs. Bowen was competent to make a will; and, therefore, that issue goes out of the contest. But they did except to the finding on the first issue, as to the manner of the alleged execution of the paper propounded as a will, and moved for a new trial, which was refused. And then the whole issues involved came on to be heard by the presiding judge, who, after argument, held and decreed as follows: "The parties seeking to set aside the probate of the will raise and urge the following propositions before me now: First. That the witness, S. S. Knight, is not a competent witness, as he signed the name of the testatrix to the paper propounded as a will. Second. That the will was not signed by S. S. Knight in the presence of testatrix. Third. That the will was not

signed by her express direction. Fourth. The signature of testatrix not having been made in her presence, was the signing of S. S. Knight's signature under hers a sufficient ratification of any previous instructions to sign for her? I am of opinion that the three first propositions are not well taken, and are overruled. As to the fourth and last proposition, I am in doubt, rather inclining to sustain the position; but as the effect would be to grant a new trial, I prefer that the Supreme Court pass upon this question, as, in that event, the case would be ended one way or the other; and, therefore, the motion to set aside the probate of the will is refused and the appeal dismissed."

From this judgment, the contestants appeal to this court, upon numerous exceptions, fourteen in number, which are all printed in the Brief. But following the good example of the appellants' attorney, we think that they all may be considered under four general propositions urged in the argument below, to set aside the verdict of the jury and refuse probate of the will, which have already been stated in the judgment of the court.

The power to direct during life how one's property shall go after death is certainly a great privilege. As was said by the court in *Means* v. *Means*, 5 Strob., 190: "The right to make a will is especially valuable to the old and infirm. Their thoughts dwell most upon posthumous arrangements, and in this right they have the means, not only of gratifying their feelings, but of securing substantial advantages while they live," &c. In order to protect this valued right against fraud and imposition, the law has prescribed for the execution of wills peculiar formalities, which must be observed. Section 1854 of the General Statutes declares that "All wills and testaments of real and personal property shall be in writing, and signed by the party so devising the same, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the said devisor and of each other by *three* or more credible witnesses, or else they shall be utterly void and of no effect." The words of this law, which are in point here, are identical with those in the old English statute

43—39

# 522

of frauds, and have often received construction, which may throw light on the inquiry here.   Mrs. Bowen, the testatrix, did not sign the paper propounded as her will, but the law allowed her to execute a will, "signed by another person in her presence and by her express directions, *attested* and *signed* by three or more subscribing witnesses, in the presence of the devisor and of each other," &c.

(1.) The first objection to the execution is, that "as Knight signed the name of the testatrix to the paper propounded as her will, he was not a competent witness to attest her will as one of the subscribing witnesses required by law."   At first some of us thought it rather an anomalous proceeding for a witness to attest a signing by himself, but Mr. Jarman explains that such a witness does not attest the signing merely, but also the directions given to sign.   But, at all events, the authorities concur, that, under the circumstances stated, the signer of the will is competent as one of the three subscribing witnesses required by law.   See 1 Jarman, 204; Schouler on Wills, 338; Redfield on the Law of Wills, 209.   Mr. Redfield says: "Both the earlier and present English statute, and most of those in force in this country, allow the testator's signature to be made by some other person, if made in the presence of the testator and by his express direction.   Under this clause of the statute, it has been held that this act may be done by one of the witnesses.   Indeed, it is the law in some of the States, that one who has signed for the testator at his request, *must write his name* as witness to the will."   We think there was no error here.

(2.) The second proposition is, that Mrs. Bowen did not give Doctor Knight "express directions" to sign her will for her.   The judge charged that it was a question of fact to be decided by the jury, saying that the "plaintiffs' attorney contended that Mrs. Bowen need not have said in articulate words, 'Doctor Knight, you must sign that paper for me,' and that is the right contention.   It is sufficient if the whole conversations that occurred between the testatrix and Dr. Knight amounted to an express declaration: it should be construed into 'an express direction' to sign the paper."   As we

understand it, a simple question and answer may amount to a declaration. We cannot suppose that the word *express* was intended to be limited necessarily to an expression in words. We take it that one perfectly dumb and unable to speak a word may in some way indicate his desire, so as to come within the provision of the law, as to giving direction—as some one has tersely put it, *a direction in fact, but not in words.* But taking both conversations of the parties together—that of the afternoon, when Dr. Knight was requested to write the will, and that at night, when they were about to execute it—we think that the judge committed no error on this point. There is no evidence that Dr. Knight was a volunteer in the matter.

(3.) The next proposition is, that "the will was not signed in the presence of Mrs. Bowen, the testatrix; and the signing of S. S. Knight's name under hers was not a sufficient ratification of any previous instructions to sign for her."

The judge charged: "If you find that S. S. Knight did not write or sign Mrs. Bowen's name to the paper propounded as her will in *her presence*, then it was not duly executed under the law; unless he then and there adopted it by signing his name as agent in the presence of the other witnesses." Under the charge, the jury must have found that Knight wrote the words, "by S. S. Knight, by request," under the name of "Emeline Bowen," already in the will, thereby adopting the name previously written by himself; and that this was done at the time the will was executed, in the presence of the testatrix and the witnesses. Assuming, then, that the name of the testatrix was written on the will in the afternoon, and not re-written at the time of execution, it is very clear that her written name, no matter when or where made, was not an accomplished act, but only preparatory to something else to give it vitality. At first the appending of "her mark" by Mrs. Bowen was intended, which would certainly have adopted it, no matter when written; but afterwards changed to "another person signing for her by request." Standing alone, it was a perfect nullity, and might have been stricken out as a word incorrectly used. As it seems to us, it is not a question of ratification by Mrs. Bowen, for she did not know that in preparing

her will her name had been written in it; but rather a ques-
tion of adoption by Knight, as a part of his signing by re-
quest. Neither the law nor the testatrix directed Knight how
he was to sign; and we cannot see why he might not adopt her
name previously written by himself, as he could then have
run his pen through the name and have rewritten it then and
there.

But if in this we are in error—if, from the nature of the
subject, Knight *could not* adopt the name of Mrs. Bowen stand-
ing on the draft of the will, so as to be a compliance with the
law, which requires that the signing by "another person" *must
be in the presence* of the testator, &c.—was it indispensable to
the execution, that the "other person" deputed to sign for Mrs.
Bowen should, in doing so, set out her name? It will be ob-
served that the law does not so require, and, as it seems, the
signing by "another person" is not confined only to the name
of the testatrix. All the authorities agree that a will may be
executed without the name of the devisor appearing on its face.
It has often been decided that a mark, without the name itself,
is sufficient, and, of course, the initials of testator's name would
also suffice. See *Ray* v. *Hill*, 3 Strob., 303, and *Adams* v. *Chap-
lin*, 1 Hill Ch., 265. And the will may be signed by another
person for the testator. That "other person," as it seems, may
be one of the witnesses, and it is immaterial that he signed his
own name instead of the name of the testator. And when the
testator directed a person to sign the will for him, which that
person did by writing at the foot, "This will was read and ap-
proved by C. F. B. by C. C. in the presence of," &c., and then
followed the signature of the witnesses, the will was held good,
&c. The following form of subscription is sufficient: "E. N.
for R. D. at her request." "So, also, where the testator's
name was subscribed at his request by one of the subscribing
witnesses." See 1 Jarman on Wills, page 79, and Redfield on
the Law of Wills, 205, and numerous cases in the notes; and,
also, 1 Williams on Executors, page 83.

But be this as it may, we can not say it was error to hold
that, under the authority given him by the testatrix to sign for
her, S. S. Knight sufficiently signed for her on Sunday night,

at the time the will was executed, in the presence of the testa-
trix and of the subscribing witnesses.

The judgment of this court is, that the judgment of the Cir-
cuit Court be affirmed, and the case be remanded to the Probate
Court of Laurens County for such further proceedings as may
be deemed proper and necessary to carry out the conclusions
herein announced.