98 615
106 96
108 382

# Garrett v. Heflin.

*Bill in Equity to Contest the Validity of a Will which Had been Admitted to Probate.*

1. *Presumption in favor of validity of will; when against it.*—Ordinarily, when a man of sound mind and memory signs and publishes his will, and calls on witnesses to attest it, the presumption is that he knows the contents, though not written by him. But when the will is written by the person intended to be benefited by it, the presumption and *onus probandi* are against the instrument.

2. *Witness to will, by making his mark, sufficient.*—The requirement of section 1, of the Code, that the testator, or grantor must write his name, has no application to an attesting witness, who may subscribe as such, by making a mark.

Appeal from Chambers Chancery Court.
Heard before the Hon. S. K. McSpadden.

This bill was filed by James R. Garrett against Wilson L. Heflin individually, and as the executor of the last will of Prudence Bailey, and others, legatees under said will, and was filed June 19th, 1890. The bill was answered, and issue was made up, and many witnesses were examined, the cause was submitted for final decree, which was rendered dismissing complainant's bill out of court. From that decree this appeal is taken to this court.

[Garrett v. Heflin.]

J. M. & E. M. OLIVER, for appellant.—When a will is contested in chancery, those claiming under it become the actors, and must support it affirmatively.    In effect, they must offer it again for probate, and when the ground of contest is fraud, they must remove or explain, and so neutralize, the facts out of which the suspicion of fraud arose.—*Hill v. Barge*, 12 Ala. 687; *Johnston v. Glasscock*, 2 Ala. 218; *Kumpe v. Coons*, 63 Ala. 448.    The unnatural character of a will is a circumstance against its validity.—*Roberts v. Trawick*, 13 Ala. 68; *Coleman v. Robertson*, 17 Ala. 84; *Fountain v. Brown*, 38 Ala. 72; *Hughes v. Hughes*, 31 Ala. 518; *Stubbs v. Houston*, 33 Ala. 555; *Gilbert v. Gilbert*, 22 Ala. 529.    That a will is written by the principal beneficiary, creates a presumption against its validity; the presumption and *onus probandi* are against the instrument, and the *onus probandi* is increased by the fact that the testator had unbounded confidence in the writer, the extreme debility of the testator, &c.—*Hill v. Barge*, 12 Ala. 687; *Lyons v. Campbell*, 88 Ala. 462; *McCartney v. Bone*, 38 Ala. 601; *Daniel v. Hill*, 52 Ala. 430; *Bancroft v. Otis*, 91 Ala. 290; *Blume v. Hartman*, 2 Am. St. Rep. 525.    Weakness of intellect, coupled with slight circumstances showing fraud, will invalidate a will.—Wharton & Stille Med. Jur., 10–11.    The will is not properly executed, being attested by only one witness who could write his name. The Code, Sec. 1966, provides that a will must be "signed" by the testator, and "subscribed" by two witnesses.    Section 1 of the Code defines "signed" or "signature."    It involves an attestation by witnesses who can write.    All instruments required by the Code to be "signed" or "subscribed" are covered by section 1.—*Bickly v. Keenan*, 60 Ala. 293.    The testimony of non-experts as to the mental condition of testatrix should not be considered except in connection with the facts on which they base their opinions.—*McCurry v. Hooper*, 12 Ala. 823; *Clark v. Fisher*, 19 Am. Dec. 402.    The chancellor erred in overruling complainant's objections to depositions of Susan Gunn and Fannie Liles. They testify not to facts but to conclusions.

W. L. HOOD, for appellees.—1. Witnesses to wills may sign their names by making their marks.—*Riley v. Riley*, 36 Ala. 496; *Bailey's Heirs v. Bailey's Executors*, 35 Ala. 687. 2. § 1966 of the Code is a substantial copy of the 5th section of the English Statute of Frauds, and the numerous constructions of that section of the English statute in the courts of England and in the courts of this country hold universally that a witness may subscribe his name by making his mark.

1 Gr. Ev. § 272; 8 Veasy Jr. 185; 13 Ind. 259; 35 Ala. 687; 36 Ala. 496. 3. There is a distinction between the maker of an instrument, and a witness thereto. The maker always binding himself or his estate, while the witness simply *attests* the fact.—*Bickley v. Kennan & Co.*, 60 Ala. 293. 4. Undue influence necessary to invalidate a will is of such a character as to destroy the free agency of the testator, and to substitute the will of another in its place.—*Moore v. Spier*, 8J Ala. 129; 1 Jarmon on Wills, 41; *Taylor v. Kelly*, 33 Ala. 611. 5. Will written by legatee, or one in confidential relations does not raise the presumption of fraud. There must be other facts and circumstances in connection.—*Bancroft v. Otis*, 91 Ala. 279; *Lyons v. Campbell*, 88 Ala. 4 2. 6. Citing on other points, 93 Ala. 293; 24 Ala. 241; 76 Ala. 222; Red. on Wills, 125-7; 81 Ala. 414; 3 N. J. Eq. 563; 58 Ind. 538; 33 Ala. 555.

COLEMAN, J.—The present bill was filed under section 2000 of the Code, to contest the validity of the will of Prudence Bailey, which had been admitted to probate by the Probate Court of Chambers county. The grounds of contest are fraud, want of testamentary capacity, and undue influence.

Testatrix died without issue or descendants, but left surviving her a brother, the complainant, and also descendants of a sister. Her former slaves and their children, and Mrs. Vickers, who waited upon and attended to her during the latter three or four years of her life, were the devisees and legatees of her will, and by the 9th clause of the will W. L. Heflin was made her residuary legatee. No provision was made for any of her next of kin by her will.

The will was attested by one witness who could and did write his name as such, and by two other witnesses, who could not write, but subscribed their names by making their mark. The instrument was declared to be, and duly published by testatrix at the time of signing it and when attested, her last will and testament.

The evidence is in conflict as to whether the will as an entirety was read over to her and explained at the time it was executed and published. We know of no law, which requires that the witnesses to a will should be informed of its contents. It is rarely the case that a witness is informed of the contents of an instrument which he attests.—*Laverett v. Carlisle*, 19 Ala. 80.

It is not pretended that testatrix could not read and write. All the evidence tends to show she could do both. Testa-

mentary capacity has been so often declared and defined in this State, it is unnecessary to repeat the general rule again. See the following authorities:—*Kramer v. Weinert*, 81 Ala. 414; *O'Donnell v. Rodiger*, 76 Ala. 222; *Taylor v. Kelly*, 31 Ala. 59; *Stubbs v. Houston*, 33 Ala. 355; *White v. Farley*, 81 Ala. 563; *Bulger v. Ross*, 93 Ala. 267.

There is some evidence tending to show that testatrix, at the time, labored under some mental delusions or hallucinations, was at times, on some subjects "flighty," as to matters not at all connected with the practical transactions of life; but a consideration of all the evidence satisfies us that testatrix possessed sufficient mental capacity to make a valid will.

The law as to what constitutes undue influence has also been clearly settled by numerous decisions.—*Eastis v. Montgomery*, 93 Ala. 300; *Lyons v. Campbell*, 88 Ala. 462; *Leeper v. Taylor*, 47 Ala. 222; *Pool v. Pool*, 35 Ala. 17; *Taylor v. Kelly*, 31 Ala. 64; *Bancroft v. Otis*, 91 Ala. 290.

As to all the devisees and legatees under the will, except W. L. Heflin, the residuary legatee, there is not only no evidence to show that testatrix was unduly influenced by them, but it is affirmatively shown that the provisions made for them was in accord with the intentions of testatrix. A different principle of law applies to Heflin, the residuary legatee. He wrote the will. In the case of *Hill v. Barge*, 12 Ala. 687, it is said: "Ordinarily, when a man of sound mind and memory executes a will by signing and publishing it, and calling on witnesses to attest, the presumption is that he knew the contents, although it is not written by him. But when the will is written by the person intended to be benefited by it, the presumption and *onus probandi* are against the instrument; but as the law does not render such an act invalid, the court has only to require strict proof; the *onus probandi* may be increased by circumstances," &c. It is said in the opinion rendered in the foregoing case, that "the proof should be so satisfactory and convincing as not to leave a reasonable doubt on the minds of the jury that the testator knew its contents at the time of its execution." Possibly, the measure of proof exacted by this statement is too stringent. In civil cases the proper measure of proof is, that the jury must be reasonably satisfied of the truth of any fact.

In the case of *Daniel v. Hill*, 52 Ala. 430, after quoting from many authorities, the court cites with approbation the following rule: "When a will is drawn by a person standing in a confidential relation to the testator, who takes a consider-

able benefit under it, that it is not necessary to prove the will was read over to the testator, or instructions given for its drawing, but that the court must be satisfied the will expresses the real intentions of the testator. The authorities in this country assert the same doctrine. Affirmative evidence, in any legal mode, that the will expresses the spontaneous intentions of the testator satisfies the court, and removes the unfavorable presumptions which would otherwise be indulged." The same rule is declared in *Lyons v. Campbell*, 88 Ala. 469, and in the more recent case of *Bancrost v. Otis*, 91 Ala. 290, *supra*.

It becomes necessary to examine the facts and circumstances surrounding and connected with the execution and publication of the will.

It appears that testatrix and her husband had resided on the place where she died for more than forty years; that her husband, Jacob Bailey, died about twelve years before testatrix's death, and left some portion of his property to his old servants and the remainder to his wife, the testatrix. The will of Jacob Baily was not introduced in evidence, but such seems to have been the disposition made of his property. During the forty or more years testatrix resided in Alabama, it does not appear that she visited her relatives who resided in Georgia, or that any of them visited her, or had any communication with her, except the complainant, who visited her twice and wrote to her. There is some evidence of declarations made by testatrix to the effect that her relatives were displeased at her marriage with Jacob Baily, and that she and her husband moved away from them to Alabama, and that by their own efforts, with the assistance of their servants, some of whom were their former slaves, they had made what property they owned, and that she did not care to let her next of kin have her property. There was certainly no concealment of the making of the will. Three witnesses were called to attest it, none of whom it seems, were at all especially friendly to Dr. Heflin. Two other witnesses were present, who did not attest the instrument. All knew it was her will. One of the witnesses, who attested the will, examined by complainant, testified that the will was read over to the witnesses, but not to testatrix, in his presence. Another witness, examined by complainant, who was present, but did not attest the will, testified at one time that she heard the will read to testatrix, but she afterwards qualified this by stating that the will was read to testatrix, except the 9th clause. The evidence shows that Dr. Heflin had been a warm personal friend of Jacob

Vol. 98.

[Garrett v. Heflin.]

Baily in his life time and of testatrix for twenty years, and was their family physician; and after the death of her husband testatrix advised with him in all her business transactions. The will was written for more than a year before her death, and she was never heard to express any dissatisfaction with the will. Heflin testifies that the will was prepared at her repeated solicitation, and as dictated by her, and that when he called her attention to her relatives, she said that her husband had made provision for their old servants, and she wanted to do the same thing, and that she did not intend to leave any of her property to her relatives, giving certain reasons for such intention.

Looking at all the evidence in the case, we can not say the conclusion reached by the chancellor was not warranted by the evidence, and that the instrument declared and published as her will truly disposed of the property as testatrix intended.

It is contended that the will was not executed according to law, in that only one subscribing witness wrote his name, while the other witnesses only subscribed by making their marks. We are of opinion that this was a sufficient attestation of the will. Our statute, in this respect, is substantially the same as the English Statute of Wills.—29 Car. 2, ch. 3.

The direct question arose in the case of *Den v. Milton,* 12 N. J. Law 70. The court charged the jury that "making of a mark is a sufficient subscription by the witness." In considering this charge, the court said, "He who is unable to write his name, and makes his mark, is notwithstanding a competent and legal witness to the execution of a will." Citing a number of cases in support of the principle. In the case of *Baily's Heirs v. Baily's Ex.,* 35 Ala. 690, this court used the following language : "It is the settled construction of the English statute, and of similar statutes in the United States, that the signature of the testator, or of the witnesses, by making a mark, is sufficient." Citing many authorities. Of course, under our statute, section 1 of the Code, where the testator or grantor can not write, but subscribes by making his mark, the attesting witnesses must write their names. A mark in such a case is insufficient. But section 1, *supra,* in a case where the party to be bound writes his name, does not require that the attesting witnesses must also write their names. The question was considered in *Baily v. Baily, supra,* and this was the conclusion of the court. We adhere to this construction.

In *Riley v. Riley,* 37 Ala. 496, *arguendo,* the same rule, that

[Bromberg v. Bates.]

an attestation or subscription by a witness by his mark was a legal and sufficient attestation was recognized. When the cases of *Baily v. Baily* and *Riley v. Riley, supra*, were decided, section one of the Code was the existing law, as it now exists. See section one of the Code of 1852.

We find no error in the record, available to appellant, and the decree of the Chancery Court must be affirmed.

Affirmed.