# McElhaney *v.* Jones.

## Bill to Annul Will.

(Decided June 30th, 1916. 72 South. 531.)

1. **Wills; Annulling; Fraud; Evidence.**—Where the bill was to annul a will, filed under § 6207, Code 1907, evidence that testatrix had long had a fixed purpose to will her property to the contestee, her step-son, on account of his kindness to her, as shown by a deed to him of her property; that he was not present at the execution of the will; that his participation in the preparation of the will was mainly referable to testatrix's request for his services, and not showing persuasion or argument by him, was sufficient to support a decree for respondent.

2. **Same; Confidential Relations; Burden of Proof.**—One attacking a will for fraud and undue influence does not shift the burden of proof to the proponent of the will by merely showing confidential relations between the beneficiary and testatrix.

3. **Same.**—Where, in addition to confidential relations between beneficiary and testatrix, circumstances of suspicion are shown, such as that the beneficiary aided in the preparation or procurement of the will, the burden shifts to proponent to show that the instrument was not superinduced by undue influence.

[McElhaney v. Jones.]

APPEAL from Lee Law and Equity Court.

Heard before Hon. LUM DUKE.

Bill by Cary P. McElhaney against Clifton A. Jones to annul a will formerly admitted to probate. From a decree for respondent complainant appeals. Affirmed.

R. DEB. WADDELL, and RUSHTON, WILLIAMS & CRENSHAW, for appellant. R. B. BARNES, T. D. SAMFORD, and N. D. DENSON & SONS, for appellee.

THOMAS, J.—This appeal is from a decree dismissing the bill of appellant, seeking to annul the last will and testament of Mrs. Mariah Hortense Jones, deceased. The ground for annulment insisted on, stated in varying forms, was the procurement of the will by means of undue influence and fraud. This influence over testatrix is alleged, in some of the paragraphs of the bill, to have been exercised by her husband, Thomas A. Jones, and in other paragraphs, by Clifton A. Jones. The latter was the son of the said Thomas A. Jones, and a stepson of testatrix. Thomas A. Jones, having died before the taking of the testimony, was stricken as a party respondent. The will thus challenged was duly probated, and to the probate proceedings appellant and all the next of kin were made parties. Within the prescribed time, Cary P. McElhaney, the brother of testatrix, began this suit for its annulment in the mode prescribed by statute.—Code 1907, § 6207.

(1) Testatrix resided at or near Auburn. On December 24, 1896, she was married to Thomas A. Jones. She died in May, 1913, being then about 65 years of age. Mrs. Jones was the daughter of Amelia and Francis G. McElhaney. The said Amelia died in 1862, leaving a last will and testament by which the property in question was devised to her husband, Francis G., for life, and at his death to their daughter, Mariah Hortense, testatrix. The said Francis G. died during the year 1903, when testatrix, as the holder of the remainder, came into the possession of the lands. Testatrix and appellant were the only children of said Amelia and Francis G. McElhaney; and if testatrix had died intestate, appellant would have been her only heir at law. His right, in that event, to said property devised by the will, would have been subject only to the husband's courtesy, which limitation terminated by his death before the final decree in this cause. The said Thomas

[McElhaney v. Jones.]

A. Jones was the father of several children by a former wife, one of whom was appellee, Clifton A. Jones. After attending the Alabama Polytechnic Institute, appellee moved to Texas, and thence to Louisiana, where he resided at the death of testatrix. During his occasional visits, appellee was attentive to his stepmother. That she was fond of him is evidenced by her declarations to that effect, her kindly attention to him, and her written statements thereof. She received financial assistance from him, and gave him no substantial return or security therefor. During the month of May, 1912, Judge J. A. Drewery (of the court of ordinary, of Griffin, Ga.) was stopping at testatrix's hotel, and he was procured by Mrs. Jones to draw a deed to the property in question, in favor of appellee. The recitals of that deed were:

"Witnesseth, that the said Mariah Hortense Jones, for and in consideration of the many kindnesses shown her by her beloved stepson, Clifton A. Jones, and money furnished her to repair and furnish her house, known as McElhaney Hotel, it is her desire, after the death of herself and her beloved husband, Thomas A. Jones, that the said Clifton A. Jones, shall take possession of, and have as his own, all of her real estate, which consists of said McElhaney Hotel, and seven acres of land, more or less. Also all her personal effects, excepting the family portraits, which she desires shall go to and become the property of her two nieces, Katie B. and Mildred M. McElhaney. And the said Mariah Hortense Jones hereby gives, grants, and conveys to the said Clifton A. Jones, his heirs and assigns, the said McElhaney Hotel and seven acres of land, more or less, on which said hotel is situated, in the town of Auburn, Lee county, Alabama, and all her personal effects, except family portraits, as above mentioned, together with all the rights and privileges thereunto belonging, forever in fee simple. To take effect after the death of the said Mariah Hortense Jones, and her husband, Thomas A. Jones."

In a frank, convincing way, Judge Drewery gives in detail Mrs. Jones' instructions to him for the drafting of this conveyance, and her reasons impelling thereto. The witness' version of how he came to prepare this conveyance was: "I met Clifton A. Jones this morning for the first time. He was not present at any conversation I ever had with Mrs. Jones. Thomas A. Jones was not present at the time she told me about the paper she wanted me to write, and the deed I testified about. He never said anything to me about that paper. He never made any suggestion as

to what was to go into that paper. When Mrs. Jones first asked me to write the deed that I have testified about, the conversation in which the deed was discussed extended over a period of about 30 minutes in the room to which she carried me to talk about it. * * * I took * * * down what she told me, and I went to Georgia, drew the paper, * * * mailed it to her, with the request that if it suited, to have it executed before one witness and an officer; if it did not suit, to erase what did not suit and send it back to me, and I would fix it and return to her. * * * She did not return it to me. She wrote me a letter saying she had received the paper, and thanking me for it and said it suited her. * * * I have that letter with me."

The letter referred to by Judge Drewery was introduced in evidence. It was as follows:

"Auburn, Ala., June 3, 1912. Judge J. A. Drewery, Dear Friend. The papers were received all right, and I want to thank you with a heart full of gratitude for your kindness. I failed to write in the paper where my stepson was living at present, he has been living in Louisiana for the past seventeen years, but he considers Auburn home. Now would it make any difference in point of law, by not giving Louisiana as his home in the deed of gift? I wouldn't want anything to come up that would give him any trouble. * * * Thanking you for your kindness, I am always, Truly your friend, 'Sister Jones.'"

Judge Drewery explained that he had often been in testatrix's house, on a personal (and, we may add, a most commendable) mission to Alabama—the courtship and marriage of his present wife, a friend of the testatrix. He stated that Mrs. Jones called him "Brother Drewery," and he called her "Sister Jones." On cross-examination this friendship was further illustrated as follows:

"Q. Did you first begin calling Mrs. Jones, 'Sister Jones,' or did she first begin calling you 'Brother Drewery'? A. I don't remember. Q. When did you first begin to use these terms towards each other? A. I commence to call people I know as 'brother' and 'sister' if they are Christian people, from the time of my acquaintance with them. D. Do they respond by calling you Brother Drewery? A. Some do, and some do not."

In this passage we have evidence of a friendship to be commended. By it we are reminded of the church life in the community of our childhood, where this good custom was the rule.

[McElhaney v. Jones.]

The execution of the deed in question was attested by two witnesses, and was duly acknowledged before a notary on June 11, 1912. This notary said that the grantor and her husband acknowledged the same before him as such officer (*Qualls v. Qualls,* 196 Ala. 524, 72 South. 76), and that the appellee was not present.

It should follow that if there was no undue influence in procuring the execution of this deed, which was to take effect after the death of Mariah Hortense Jones, and of her husband, it is of great evidential value to show that no undue influence induced the testatrix to the execution of the will. This court has long held that an instrument to take effect at the death of the maker may be upheld as a deed when the same was duly delivered during the life of the maker.—*Goodlittle v. Bailey,* Cowper, 600; 2 Black. Com. 302; *Hall v. Burkham,* 59 Ala. 349; *Sharp v. Hall,* 86 Ala. 110, 5 South. 497, 11 Am. St. Rep. 28; *Griswold v. Griswold,* 148 Ala. 239, 42 South. 554, 121 Am. St. Rep. 64; 2 Mayf. Dig. 817.

That Mrs. Jones had a fixed intention to give or devise this property to appellee is abundantly shown. Take, for example, the testimony of Mrs. Drewery on this point. It will be noted that Mrs. Drewery was a former resident of Auburn, that she had been on most friendly terms with Mrs. Jones, and that she did not know Clifton A. Jones. Mrs. Drewery was married in December, 1911, and thereafter, on her visits to Auburn, she frequently called on Mrs. Jones, and had had frequent conversations with her before witness left Auburn after her marriage. This witness testified that she had heard testatrix speak of the disposition she wanted to make of her property, or that she intended to make of it; she especially referred to a conversation had in the summer of 1908, when witness, with testatrix, was spending the day at the home of witness' sister, and stated that at such time testatrix told witness' sister "she wanted to give the hotel to Mr. Clifton Jones." On cross-examination witness detailed the circumstances of this conversation. Said testatrix spoke of the many kindnesses he (appellee) had done for her, and stated that if he had been her own son he could not have been kinder, and that she wanted this place (meaning the property in question) to go to him after her death. This conversation took place about 4 years before the execution of the deed drawn by Judge Drewery.

Likewise, from the testimony of Miss Kate McElhaney, it appears that months before her death Mrs. Jones stated to witness that appellee was a "good son" to her, that he had fixed up the house, and that she expected to leave her property to him, or that she would leave her property to him.

It would subserve no good purpose to discuss in detail the testimony, on this point, of witnesses Wright, Smith, Sellers, Jones, and Dr. Yarbrough. Each of these witnesses swore that while appellee was absent from Auburn Mrs. Jones stated she would devise her property to him. These statements of testatrix were made under circumstances that indicated they were the expression of her own volition, and were not the product of any undue influence on the part of any one. The subsequent execution of the deed, and of the will of like import, was confirmatory of such statements.

It is insisted by appellant, however, that testatrix was addicted to the use of opiates, which were administered by her physicians and by her immediate family, and that appellee retained a subtle influence over her, by sending these drugs from New Orleans. Counsel for appellant in argument say: "The court judicially knows something of the habits of mind and impairment of will power of a confirmed user of opium, a 'morphine eater,' as described in the very frank statement of one witness—who had been through the valley—and as so vividly portrayed in the immortal work of Thomas De Quincey."

There can be no doubt that the long-continued use of opium impairs the power of a human will, and it may be, as De Quincey said, in his Confessions, that, "The power to will is left, yet not the power to decide it." Yet the evidence does not show such a state of fact as to the mind of testatrix.

It is true that the witness for appellant, referred to by counsel, gave it as her opinion that one who was addicted to the morphine habit would steal the drug or go any length to obtain it. The evidence shows, however, that Mrs. Jones' physician had been providing and injecting morphine daily, as the occasion of her necessities demanded. She was therefore not entirely dependent on appellee for her daily opiates.

If it be a fact that appellee knew of the weakness of his stepmother, of her desire for more of the drug than was provided by her physician, and that neither he nor his father reported this to her physician, such fact, of itself, would not show the exertion

of an undue influence, in the procurement of the execution of the deed and the will in question. If appellee procured in a distant state the drug she required, and sent it by express, at her request, this would be a mere circumstance, to be considered with all of the other evidence, in determining whether, by such mistaken kindness, appellee subjected himself to the imputation of fraud, because forsooth she made him the beneficiary in a deed, the drafting and execution of which he had never heard of until consummated, and in a will, that only put into testamentary form the provisions of such deed.

The testimony of her pastor, of the pastor of a sister church, of her physician, and of many witnesses is uniform to the effect that testatrix was in the possession of her mental faculties before, and at the time of, the execution of these two conveyances.

Appellee denies that he sent such narcotics to testatrix. Yet, even if he did, we could not, in the light of the evidence, infer that this gave him a dominion over her such as amounted to undue influence—that influence which, exerted in the procurement of a will or like instrument, will, in law, invalidate the instrument. The case of appellant would be stronger if appellee had been the only agency through which testatrix could obtain this drug.

The only connection appellee is shown to have had with the making of the will was such as might be inferred from the facts that testatrix read in his presence the deed, placed it in an envelope and requested that he take it to her attorneys for consideration; that he did as she requested, and sent to her the attorneys' reply; that he returned, at her request, to the attorneys' office for the will prepared by them pursuant to the terms of the Drewery deed, and that he gave to testatrix the will so prepared by her attorneys. Appellee was not in Auburn when the will was executed, but at his home in Louisiana.

The testatrix's act in executing the will was but the consummation of the intention she had freely expressed and reiterated to friends and physicians, and this will was of like import to the deed she had had Judge Drewery to draw. The record does not show even persuasion or argument addressed to the judgment or affection of the testatrix.—*Eastis v. Montgomery*, 93 Ala. 293, 9 South. 311; s. c., 95 Ala. 486, 11 South. 204, 36 Am. St. Rep. 227; *Mullen v. Johnson*, 157 Ala. 262, 47 South. 584; *Councill v. Mayhew*, 172 Ala. 295, 55 South. 314; *Smith v. Smith*, 174 Ala. 205,

56 South. 949; *Jones v. Brooks,* 184 Ala. 115, 63 South. 978; *Scarbrough v. Scarbrough,* 185 Ala. 468, 64 South. 105.

In *Mullen v. Johnson, supra,* it was shown that the wife, without suggestion, told Johnson to see an attorney, and have her will drawn, leaving him her property; that he then told her that he would make a will in her behalf, and suggested a joint will. The attorney advised separate wills, and so drew them, and delivered the wife's will to Johnson. The latter paid the attorney's fee and carried the will home on the date of its execution, placing it in his wife's desk. At the request of testatrix, the nurse got the will from the desk and handed it to her. After she had read it, she remarked to those present that it was drawn as she had directed. The nurse replaced the will in the desk. When the physician came testatrix asked that he and the nurse witness her signature, made by mark; she being unable to write. This court said:

"In my opinion the testimony in the cause clearly shows that Thomas M. Johnson acted only under the direction and instructions of his wife, supplying, of his motion, not even a suggestion from the beginning to the end, except that of a joint will following, and conditioned in suggestion upon the clearly expressed purpose and desire of Mrs.' Johnson. The activity that effects to cast the burden on the beneficiary, confidentially relationed, can never be an activity solely referable to a compliance with or obedience to the free and voluntary instructions or directions of the testator. This is the view announced in *Eastis v. Montgomery,* 95 Ala. 493 [11 South. 206, 36 Am. St. Rep. 227]. * * * 'There is no evidence in this record of any activity on the part of Jonathan Montgomery in and about the preparation and execution of the will, except such as was the result of the result of the wishes and requests of the testatrix, which, so far as the evidence discloses, were entertained and expressed by her of her own free will, and not themselves induced by any undue influence. Such activity, not of proponent's own motion or prompted by personal motives, but in behalf of the testatrix and in furtherance of her purposes, will not combine with confidential relations to shift the burden of proof as to undue influence upon the proponent.' "

This principle was affirmatively recognized in *Garrett v. Heflin,* 98 Ala. 615, 13 South. 326, 38 Am. St. Rep. 89; but the decision was that, under the facts of that case, the person enjoying the confidential relation had been so active as to merit the im-

[McElhaney v. Jones.]

position of the burden.   In *Jones v. Brooks, supra,* it is said: "We are of the opinion that the only activity or interest shown by this contestee was in attempting to get the testatrix to sign a certain paper prepared by him at her request, and after repeated suggestions from her that she wished to make her will leaving him all of her property, and after she had repeatedly expressed a desire and intention to will him her said property to divers and sundry persons.   It also appears that, after the paper was written by this contestee and was shown, or handed, to his wife, she deemed it insufficient, and for that or other reasons declined to sign it; that he did not urge or insist upon her signing it, but immediately destroyed it.   It may be true that he brought the scrivener of the present will to the house, W. T. Rutledge, but the evidence shows that he went for said Rutledge and his wife in order to have company and assistance in his home while his wife was undergoing a surgical operation then in contemplation by the physicians; and the proof further shows that he made no mention of a will to any one, and that no mention was made of a will until said Rutledge reached the house and was informed by Mrs. Jones that she wished him to prepare her will, and there is no evidence that his contestee urged or requested his wife to make such a will.   We do not think that the evidence showed such activity on the part of this contestee as would cast upon him the burden of proof as to undue influence."

The facts tending to show participation on the part of the devisee in the preparation of the will, in the present case, are not as strong as were those in *Mullen v. Johnson, supra,* or in *Scarbrough v. Scarbrough, supra.*   In the latter case the relationship was that of brother and sister, and was confidential.   The testatrix, in her last illness, was confined to her bed at devisee's home. The devisee, acting upon his sister's suggestion "made a memorandum of her wishes, and by her direction took it to the lawyer, who had for years been advising her husband and herself about their affairs of various kinds.   The lawyer, acting upon his own initiative entirely and upon his own notion as to what was proper and expedient in the premises, though disposing of the estate, according to the indicated wishes of testatrix, added certain collateral provisions to which appellants refer as being greatly for the benefit of defendant, but some of which defendant thinks imposed burdens upon him of which he would have been gladly relieved, to wit:   He inserted a provision that defendant, who

[McElhaney v. Jones.]

was to be executor, should not be required to give bond or account to any court; that the several bequests, the one to defendant being first named, should be satisfied in the order named; that the defendant as executor should have certain enlarged powers which were to be exercised by him as trustee for other beneficiaries; and that defendant should be compensated for his services as executor over and above the legacy to him. Defendant, we may fairly infer, after informing himself of the contents of the will as drawn by the lawyer, submitted it to testatrix and left it with her for consideration. Some hours later, on her request, he summoned the lawyer and another person of her nomination to witness the execution of the will. He denies doing more. There is no evidence that he did more. He was not present when the will was executed. Probably on these facts it ought to be held that by implication defendant suggested to testatrix his approval of the additional provisions the scrivener had put into his draft of the will, and thereby that she should approve them. All the rest was nothing more than the mechanical performance of services requested by testatrix, and could have had no tendency to impose defendant's will upon testatrix in any respect. A suggestion of that sort looks like a slender thread on which to hang a great doctrine; but for the purposes of this case we will concede complainants' contention that this was activity which, under the rule of our law, put upon defendant the burden of proving that the will was not the product of undue influence."

(2, 3) This court has declared, of the burden of proof, on the question of fraud and undue influence as a ground of contest, that the issue set before the court is whether the instrument was the result of the free will of the testatrix, or whether her intention to so provide was produced by the domination of another mind, and that the presumption of undue influence is not raised, nor is the burden of proof as to that issue shifted to the proponent of the will, as to one who would sustain it after probate by the mere fact of confidential relation borne by the beneficiary toward the testatrix. Where, however, in addition to such relation of trust and confidence circumstances of suspicion are shown, as, for example, that the beneficiary took part in the preparation of the will or the procurement of it, the burden is shifted, and the law lays it upon the proponent to show that the contested instrument was not superinduced by undue influence.—*Eastis v. Montgomery, supra; Bancroft v. Otis,* 91 Ala. 279, 8 South. 286, 24 Am. St.

[Warren v. The State.]

Rep. 904; *Moore v. Heineke,* 119 Ala. 627, 638, 24 South. 374; *Cogbill v. Kennedy,* 119 Ala. 641, 24 South. 459; *Mullen v. Johnson, supra; Scarbrough v. Scarbrough, supra.*

If, however, the slight activity on the part of the appellee, to be gathered from the evidence, casts upon him the burden of showing that the contested instrument was not superinduced by fraud or undue influence, we are of the opinion, in the light of the whole evidence, that he has overcome all adverse presumptions. The preponderance of the evidence shows that this will was the voluntary and untrammeled act of testatrix (194 Ala. 119, 63 South. 978), and, as such, was justly admitted to probate as the last will and testament of Mariah Hortense Jones, deceased.

The decree of the Lee county court of law and equity is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.