(88 South. 861)

## GOLDSMITH v. GATES et al.   (3 Div. 458.)

(Supreme Court of Alabama. Jan. 20, 1921. Rehearing Denied April 28, 1921.)

**1. Wills ⟨©⟩111(3) — Testator's name may be signed by a witness at his direction.**

Under Code 1907, § 6172, requiring a will to be signed by the testator or signed for him by some person in his presence and by his direction, the signing for him may be done by one who is also a subscribing witness to the will.

**2. Wills ⟨©⟩111(4)—Assistance to testator in signing does not invalidate will.**

The fact that the testator was assisted because of physical defects or weakness in writing his signature to the will makes it none the less his act if he was conscious of the act and its effect, or the surrounding circumstances were such as to show it was his conscious individual act.

**3. Wills ⟨©⟩111(3)—Signature written by testator's son held that of testator.**

In. proceedings to contest a will, evidence that testator's name was written by his son while testator rested his hand on the son's hand, after the testator had remarked that because of his blindness he could not sign the will himself, but that he had been informed that method would be legal, shows that the signature to the will was that of testator.

**4. Wills ⟨©⟩166(1)—Evidence held not to show undue influence by testator's wife.**

In proceedings to contest a will, evidence that the will was executed at a distance from testator's home, after he had procured its preparation by a friend, held not to show that it was procured by undue influence on the part of testator's wife.

**5. Wills ⟨©⟩119 — Testator need not inform subscribing witnesses of contents of instrument.**

It is not essential to a valid will that the testator inform the subscribing witnesses that the instrument was his will, or tell them its contents.

**6. Wills ⟨©⟩289 — That testator executed will after time to learn its contents creates presumption he knew contents.**

That a will was sent to testator by the friend whom he had requested to prepare it several months before it was executed, without showing that it was out of his possession in the meantime, raises the presumption that he was familiar with the contents of the instrument before he executed it.

**7. Wills ⟨©⟩302(3) — Scrivener's memoranda, differing from will, do not require rejection of will.**

That memoranda made by the scrivener during his interview with testator prior to preparing the will differed from the will as prepared does not require the rejection of the will, especially where the scrivener's testimony showed that the provisions under the will were discussed in detail, and that the memoranda were mere outline statements.

**8. Wills ⟨©⟩302(3)—Evidence held not to overcome presumption testator knew contents of will.**

In proceedings to contest a will, evidence that the will as prepared by the scrivener was sent in the sealed envelope to testator, who was nearly blind, and that testator did not open the envelope until shortly before he executed the will, and did not state the contents of the will to any one, held not sufficient to overcome the presumption that the testator knew the contents of the will.

**9. Wills ⟨©⟩277 — Partial probate, excluding items differing from memoranda not presented by objections to the whole will.**

The question of the partial probate of a will, some items of which were alleged to differ from memoranda by the scrivener of testator's directors, is not presented, where the grounds of contest were directed against the probate of the whole will.

**10. Wills ⟨©⟩386—Probate court's finding have same effect as those of law and chancery courts.**

Where a will contest was tried by the court without a jury, the rule that applies to similar trials in law courts and in chancery, where the evidence is oral, applies in the probate court.

Appeal from Probate Court, Lowndes County; W. H. Lee, Judge.

Application by R. E. Gates and others for probate of the will of C. E. Gates, Sr., contested by Robert L. Goldsmith, as guardian ad litem of one of the minor legatees. From a decree admitting the will to probate, the guardian appeals. Affirmed.

Powell & Hamilton, of Greenville, for appellant.

The will was not properly executed. Section 6172, Code 1907; 36 Ala. 496; 40 Cyc. 1100 et seq.; 1 Houst. (Del.) 98; 1 Har. (Del.) 464; 64 Neb. 150, 89 N. W. 665; 48 Neb. 608, 67 N. W. 470; 48 Minn. 420, 51 N. W. 217; 45 Minn. 361, 47 N. W. 1069.

<hr>

⟨©⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The burden was upon the proponents. 108 Ala. 389, 18 South. 831; 127 Ala. 33, 28 South. 687; 151 Ala. 602, 44 South. 605.

J. R. Bell, of Hayneville, and Steiner, Crum & Weil, of Montgomery, for appellees.

The will was properly executed. 127 Ala. 14, 28 South. 687; 35 Ala. 687; 179 Ala. 666, 60 South. 289; 36 Ala. 496; 98 Ala. 620, 13 South. 326, 39 Am. St. Rep. 89; section 6172, Code 1907; 82 Miss. 688, 21 South. 41, 35 L. R. A. 102; 32 Miss. 466; 21 Ark. 309; 17 W. Va. 683, 41 Am. Rep. 682; 15 Misc. Rep. 196, 37 N. Y. Supp. 39; 29 Pa. 232; 46 N. J. Eq. 515, 22 Atl. 125. The testator had sufficient knowledge of what the will contained. 49 Amer. Dig. 319; 50 Amer. Dig. 411; 49 Cent. 319; 61 Hun, 101, 15 N. Y. Supp. 425; 98 Ala. 615, 13 South. 326, 39 Am. St. Rep. 89; 52 Ala. 430.

THOMAS, J. The appeal is from a decree of the probate court, admitting to probate the last will and testament of Christian E. Gates, deceased.

The final decree determined the issues of fact adversely to contestants. That is to say, it was decreed:

"That said instrument was duly executed by the said Christian E. Gates, Sr., deceased, as his last will and testament; that it is the last will and testament of the said Christian E. Gates, Sr., deceased, and that its execution was not procured by and through undue influence."

To this judgment appellant, as guardian ad litem for Clara Belle Twombly duly and legally excepted (McGowan v. Milner, 195 Ala. 44, 47, 70 South. 175), prosecuted this appeal (Code § 2856), duly assigned error, and urges the same by brief of able counsel (Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 South. 158).

[1] Was the will legally executed by the testator, who was blind? Statutory requirements of the execution of a will, to be effectual to pass real or personal property (except in cases provided for by the statute as to nuncupative wills bequeathing personal property, section 6176 of Code 1907, and section 6178 of Code, providing for soldiers, seamen, and mariners disposing of their personal property as they might have done before the adoption of the present Code, Aikin's Digest, p. 449, § 5; Clay's Digest, p. 597, § 5), are that the same be (1) in writing; (2) signed by the testator; or (3) signed for the testator by some person in his presence and by his direction; (4) and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator (Code 1907, § 6172; Allen v. Scruggs et al., 190 Ala. 654, 67 South. 301; Wade v. Cole, 200 Ala. 691, 77 South. 234; Dawkins v. Dawkins, 179 Ala. 666, 60 South. 289; Schieffelin v. Schieffelin, 127 Ala. 14, 36, 28 South.

687; Garrett v. Heflin, 98 Ala. 615, 620, 13 South. 326, 39 Am. St. Rep. 89; Bailey v. Bailey, 35 Ala. 687). It has long been the law, under the statutes of this state, that the testator's name may be signed for him by another person in his presence and by his direction, and this may be done for him by one of the subscribing witnesses to the will. Riley v. Riley, 36 Ala. 496; Armstrong v. Armstrong, 29 Ala. 538; Herbert v. Berrier, 81 Ind. 1; Ex parte Leonard, 39 S. C. 518, 18 S. E. 216, 22 L. R. A. 302. Analogous authorities are Lewis, Adm'r, v. Watson, 98 Ala. 479, 481, 13 South. 570, 23 L. R. A. 297, 39 Am. St. Rep. 82; Harwell v. Zimmerman, 157 Ala. 473, 477, 47 South. 722, and general authorities are collected in 40 Cyc. pp. 1103, 1115, 1332.

[2] The fact that the testator was assisted, because of physical defect or weakness, in writing his signature to the will, makes it none the less his individual, conscious, and voluntary act, if the testator was so conscious of the act and its effect or the attending circumstances and surroundings were such as to show that it was his conscious, voluntary, individual act. Vines v. Clingfost, 21 Ark. 309; In re Allen, 25 Minn. 39; Mc-Mechen v. McMechen, 17 W. Va. 683, 41 Am. Rep. 682; Vandruff v. Rinehart, 29 Pa. 232; Fritz v. Turner, 46 N. J. Eq. 515, 22 Atl. 125; Watson v. Pipes, 32 Miss. 466; Sheehan v. Kearney, 82 Miss. 688, 21 South. 41, 35 L. R. A. 102.

[3] We have examined the evidence on this phase of the contest of probate, and it fully warrants the holding of the probate court that testator's will was executed pursuant to the statute. The fact that testator was about 85 years of age and almost blind, that the son actually wrote testator's name to the will, while testator (the father) rested his hand on the back of the son's hand, did not fail of statutory requirement. The witnesses as to the circumstances of the signing of the will related how a check on the Selma bank had theretofore been signed by the testator, in the same manner in which the will was executed, by the son writing his father's name and the father (at the time) holding to the back of his hand while so subscribing; that it was testator's desire to so execute the will, which he did. Though there was no express direction on the part of testator to his son to sign the name to the will, yet all the circumstances show that the name of testator was written to the will in manner indicated, and that this subscription was by and with the full consent and concurrence of the testator, fully conscious of the effect of his act. This was sufficient affirmative action on the part of the testator to comply with the statute, that the name of the testator was signed by him to the will, or signed for him by some person in his presence, at his direction. Of the signing and attest-

ing of the will, in response to the question propounded by the court as to the manner and how the will was signed, Mr. Scarborough said:

"The old gentleman was almost blind, and he stated that he could not see to sign the will, but that somebody had told him that it would be legal to hold his son's hand and let his son direct the pen in the signing of the will, and that's what they did. Emmett Gates was the son. He held the pen and directed it, and his father held his hand. That is the way the will was ·signed. That was in my presence and in the presence of the other witness."

[4, 5] We have examined the evidence, and there is no inference to be drawn therefrom to show that any undue influence (McElhaney v. Jones, 197 Ala. 303, ·72 South. 531) on the part of Mrs. C. E. Gates, the wife of testator, or on the part of any other person, induced the execution of said will, or that it was procured through undue influence. While at a distance from his home, the testator produced the paper which was executed by him and attested at his request by the witnesses, and which he declared at the time of its execution to be his will. He had theretofore procured its preparation by a friend in no wise interested in the properties disposed of or in the beneficiaries thereunder. Under the law the testator did not have to inform the subscribing witnesses that the instrument was his will, or give them information as to its contents. Leverett's Heirs v. Carlisle, Ex'r, 19 Ala. 80; Garrett v. Heflin, supra; Barnewall v. Murrell, 108 Ala. 366, 18 South. 831.

[6] As to appellant's insistence, that testator did not know of the contents of the will, and that the same was not drawn in accordance with his instructions, the evidence shows that the testator discussed its preparation with that draftsman during parts of two days, and that the latter made memoranda of items to be embraced therein; that on returning to his office the solicitor reduced the several items to legal form as he understood the testator's instructions, and mailed the paper to the testator, who received and kept it locked up in his trunk for months; and on the date of its execution carried it a distance to the store of a friend, who he requested, with another, to act as attesting witnesses to his signature thereto, which was duly executed by testator and attested by said witnesses, and to whom the testator declared that it was his will. The paper having been in his possession for a sufficient time in which to acquaint himself with its contents, the presumption is that he did ·so, and if it was in substantial accord with testator's instructions to the solicitor who drew it after its due execution was sufficient to admit to probate and to convey testator's properties.

The rule is thus stated in Garrett v. Heflin, 98 Ala. 615, 618, 619, 13 South. 326, 327 (39 Am. St. Rep. 89):

"Ordinarily, when a man of sound mind and memory executes a will by signing and publishing it and calling on witnesses to attest, the presumption is that he knew the contents, although it is not written by him. But when the will is written by the person intended to be benefited by it, the presumption and onus probandi are against the instrument; but as the law does not render such an act invalid, the court has only to require strict proof; the onus probandi may be increased by circumstances (Hill v. Barge, 12 Ala. 687); and, when a will is drawn by a person standing in a confidential relation to the testator, who takes a considerable benefit under it, that it is not necessary to prove the will was read over to the testator, or instructions given for its drawing, but that the court must be satisfied the will expresses the real intentions of the testator. The authorities in this country assert the same doctrine. Affirmative evidence, in any legal mode, that the will expresses the spontaneous intentions of the testator satisfies the court, and removes the unfavorable presumptions which would otherwise be indulged." Daniel v. Hill, 52 Ala. 430.

The same rule is declared in Lyons v. Campbell, 88 Ala. 462, 469, 7 South. 250, and in the more recent case of Bancroft v. Otis, 91 Ala. 279, 290, 8 South. 286, 24 Am. St. Rep. 904.

The rule of Hill v. Barge, supra, 12 Ala. 687, has been announced in many states, and the authorities are collected in L. R. A. 1918D, 749, note, where the editor says:

"In every case in which it is sought to establish a will, it is necessary to establish the facts essential to the existence of a valid will. That the testator know the contents of the will, being a requisite to the validity thereof, this fact must be established. However, in the ordinary case of the execution of a will by a testator of sound mind, there is a presumption from the fact of execution in accordance with the legal formalities that testator knew and understood the contents thereof. The rule is stated in one case [Hill v. Barge, supra, p. 694] that 'ordinarily, when a man of sound mind and memory executes a will by signing and publishing it and calling on witnesses to attest it, the presumption is that he knew the contents, although it is not written by him.'"

In Parker et al. v. Felgate and Tilly, 8 Probate Div. (Law Rep., 1882–83) 171, 173, Sir J. Hannen (President), in the course of summing up the case, said:

"If a person has given instructions to a solicitor to make a will, and the solicitor prepares it in accordance with those instructions, all that is necessary to make it a good will, if executed by the testator, is that he should be able to think thus far: 'I gave my solicitor instructions to prepare a will making a certain disposition of my property. I have no doubt that he has given effect to my intention, and I accept the document which is put

before me as carrying it out.' * * * Do you believe that she was so far capable of understanding what was going on?" Boyd v. Cook, 3 Leigh (Va.) 32; State v. Martin, 2 La. Ann. 667.

The effect of the testimony of Mr. Easterly was that he prepared the will as a personal friend and at the solicitation of the testator, after a prolonged conference with him as to its contents; that it was drawn from notes taken down by Mr. Easterly as Mr. Gates suggested them, and after full discussion of each item; that none of testator's children were present, nobody else discussed the matter of the will with Mr. Gates (in his presence), though Mrs. Gates came into the room (to bring some water), and Mr. Gates told her he had left her $4,000, asked if that was sufficient, and she replied it was ample, and later Mr. Gates called his wife into the room to find out some person's name. Witness further said that he did not advise with Mr. Gates or make suggestion as to what disposition he should make of his property; that testator told him what was desired, and witness "took his [testator's] suggestions down on this memoranda, and from that wrote the will and mailed it back to him."

[7] The argument of appellant is that differences in the will and memoranda were sufficient to cause the rejection of the will. This insistence would make of the memoranda the will itself. Such is not the effect of the evidence, when all of Mr. Easterly's testimony is looked to in explanation of the will and memoranda. At most, the first paper was merely memoranda made by Mr. Easterly of several of the items to be embraced in the will, to aid him in drawing the will in substantial conformity to the instructions of Mr. Gates. The witness said:

"The notes from which the will was written were taken down simply as Mr. Gates suggested and after a full discussion of each item."

To have embodied in the memoranda every particular of the several items—of that full discussion of each item—would have rendered unnecessary the final preparation of the will. Mr. Easterly does not testify that he made a memorandum of every detail or particular of the "full discussion of each item," but that he "took his [Mr. Gates'] suggestions down"; that Mr. Gates understood what he wanted to do, and so instructed Mr. Easterly. Speaking further of this the witness said on cross-examination:

"It was in July, 1918, as well as I can remember, that I was down at Mr. Gates' and took the memorandum from which the will was written. * * * In the latter part of July, 1918, as I recollect, I went back to Mr. Gates' and stayed there one day and night and part of another day. While down there I took this memoranda about which I have been testifying.

I discussed it with Mr. Gates, and took the memoranda down for the purpose of writing his will. I then brought the memoranda home, about which I have testified, and wrote the will within a few days thereafterwards. I would say it was during the month of July, 1918. After I wrote the will I sealed it up in an envelope and mailed it to Mr. C. E. Gates, Sr., at his post office address, Mt. Willing. The best of my recollection is that's where he told me to send it. I sent it to wherever he told me to. That's my connection with the transaction. I did not advise with him or make any suggestions as to what disposition he would make of any of his property. He was the man who told me what to do; what he wanted to do. I took his suggestions down on this memoranda, and from that wrote the will and mailed it back to him. As to the matter of his being practically blind at that time, he told me he could not see well."

On redirect examination the witness said that—

"These notes are the directions Mr. Gates gave me by which I wrote his will."

The will was thus prepared, sent to Mr. Gates in July, 1918, and retained by him till April 28, 1919, when it was signed and published by Mr. Gates as the will. The evidence fails to show that during this time any other person than Mr. Gates had the custody or possession of the paper. Thus ample time elapsed for testator to have informed himself of its every item and detail thereof; and the evidence tending to show that testator never broke the seal of Easterly's letter containing the will as drawn and the variations between the memoranda and the will are not sufficient to authorize its rejection in evidence and probate.

[8] The evidence shows that Mr. Easterly acted in the utmost good faith in drawing the will, and had no interest other than to carry out the wishes of the testator. It is only when a will is written by one intended to be benefited by it that the presumption and onus probandi are against the instrument. Garrett v. Heflin, supra. Under the rule of evidence obtaining as applicable to the instant facts, the presumption is that Mr. Easterly acted honestly, and wrote his friend's will in exact accordance with the wish and specific directions of the testator, who retained it for months as so prepared, and executed it without change, after declaring its testamentary nature to those present and to the witnesses attesting the signature of the testator thereto. The burden of overcoming this presumption is on the contestants; they have failed to meet this burden.

[9] The grounds of contest were directed against the probate of the whole will, and if appellant's insistence be conceded, that one or more items of the will did not strictly conform to instructions of the testator, the question of partial probate was not presented to the court below. Henry v. Hall, 106

Ala. 84; 17 South. 187, 54 Am. St. Rep. 22; Councill v. Mayhew, 172 Ala. 295, 55 South. 314; Eastis v. Montgomery, 93 Ala. 293, 9 South. 311; Holmes v. College, 87 Kan. 597, 125 Pac. 25, 41 L. R. A. (N. S.) 1126, notes, Ann. Cas: 1914A, 475; 40 Cyc. 1233.

[10] Moreover, the contest of the probate of the will was tried by the court without a jury, passing upon the law and the facts after seeing and hearing the witnesses. The rule that has been applied in law courts and in chancery, where the evidence is ore tenus (Hackett v. Cash, 196 Ala. 403, 72 South. 52; Andrews v. Grey, 199 Ala. 152, 74 South. 62; Ray v. Watkins, 203 Ala. 683, 85 South. 25), has application to a trial on oral testimony in the probate court.

The decree of the probate court is affirmed. Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.